HORACE ADAMS *v.* SENECA FIELD, Executor of SAMUEL ADAMS.

Documents, the genuineness of which is admitted, or established by clear, direct and positive testimony, and which are not otherwise in evidence in the case, may yet be permitted to go to the jury, for the purpose of comparison of hand writing.

In this case the will commenced in these words, " I, Samuel Adams," &c., and was wholly in the hand writing of the testator, but written at different times, and contained the usual *testimonium* clause, and was not subscribed by the testator at the foot; but it appeared, that the testator produced the instrument in the presence of three witnesses, and declared it to be his will, and requested them to witness it, and that they did attest it in the presence of the testator and of each other; *Held,* that the testator thereby adopted the instrument, as it was then signed, as his will, and that the will thereby became complete, the same as if the testator had originally written his name at the commencement, with the intent that it should serve as a signature to the will, and that it was a sufficient signing of the will, within the meaning of the statute of this state.*

A will need not be signed by the testator in the presence of the attesting witnesses; but if it be so signed, that it can in any event satisfy the statute, and the testator declare it to be his will in the presence of three witnesses, this is equivalent to signing it in their presence.

When an English statute, which has received a fixed and known construction, is adopted in this state, it must receive the same construction here,—and this upon the ground that such was the implied intent of the legislature.

APPEAL from a decree of the probate court for the district of Fairhaven, approving and allowing an instrument in writing, presented by Seneca Field, the appellee, the executor therein named, for probate, as the last will and testament of Samuel Adams, late of Westhaven, deceased. The objections filed by the appellant were, that the said instrument in writing was not signed by the said Samuel Adams, nor by any other person in his presence and by his express direction; and that the said instrument was not attested and

---

* Which statute is in these words,—" No will, except such nuncupative wills as are hereinafter mentioned, shall be effectual to pass any estate, real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed by three or more credible witnesses, in the presence of the testator, and of each other." .

subscribed by three credible witnesses in the presence of the said Samuel Adams and of each other; and that the said instrument was not the last will and testament of the said Samuel Adams. Trial by jury, September Term, 1846,—WILLIAMS, Ch. J., presiding.

On trial the appellee presented the instrument in writing, which was claimed to be the last will and testament of the deceased. This instrument commenced as follows,—" I, Samuel Adams, of Westhaven," &c., " do hereby make this my last will and testament;" —then followed clauses disposing of the testator's estate; then followed the *testimonium* clause, in these words, " In testimony whereof I have hereunto set my hand and seal and publish and declare this to be my last will and testament, this 12th day of September, in the year of our Lord eighteen hundred and thirty seven"; and then followed the attesting clause, which was in these words, " Signed, sealed, published and declared by the said Samuel Adams as his last will and testament in presence of us, who having hereunto subscribed our names as witnesses thereof, at the [SEAL.] request and in the presence of the testator and in the presence of each other." This last clause purported to be signed by Freeman Benson, Sally Benson and Jane Smart as witnesses; but the name of the testator was not subscribed at any place at the bottom of the instrument, nor was his name written at any place except in the first clause, and in the attesting clause, as above recited.

The appellee then called Jane Smart as a witness; and her testimony tended to prove, that the said instrument was declared by said Samuel Adams to be his last will, and that it was, at his request and in his presence, attested and subscribed by her, and also by Freeman Benson and Sally Benson, they all being then in the presence of the testator and of each other.

The appellee then called Freeman Benson and Sally Benson as witnesses; and their testimony tended to prove, that the signatures of their names to the said instrument were not made by them, or with their consent or knowledge, and that the said Samuel Adams never requested them, or any other person, or persons, in their presence or hearing, to witness the execution of any paper whatever as his will, and that they never attested and subscribed the said instrument, or any other paper whatever, in the presence of the said Samuel Adams and Jane Smart.

33

The appellee then offered to give in evidence signatures, made by Freeman Benson and Sally Benson, of their names, on several different papers, together with proof of their genuineness, either from their own admissions or other testimony,—and also testimony tending to prove, that the signatures of the names of the said Freeman Benson and Sally Benson to the said instrument offered as the will were respectively in their proper hand writing, by the evidence of persons acquainted with the same; to the admission of which signatures and testimony the appellants objected; but the objection was overruled by the court.

The appellee also introduced evidence tending to prove, that the said instrument offered as the will was wholly in the hand writing of the said Samuel Adams;—but the same testimony tended to prove, that the said instrument was written by parts, or portions, with different pens and ink, and at different times.

The appellant requested the court to charge the jury, that if they should find, that Samuel Adams had an intention to subscribe the said instrument in regular form, at the foot and end of the same, or to do any other act of signing, or to perfect his signing of the same, but never executed his intention, neither the writing of his name by him in the formal introduction, nor in the attestation clause, would be a sufficient and legal *signing* of the instrument, within the statute, although the jury might find, that the said instrument was wholly in his hand writing;—and also, that the writing of his name, by the said Samuel Adams, in the formal introduction of the said instrument would not constitute a sufficient signing of the same as a will, unless the jury should also find, that it was one simultaneous act with the writing of the whole instrument by him, and also, that the whole act, or intended instrument, was in his contemplation at the time of his writing such formal introduction; and that, if the jury should find, that such was not the fact, or that the said instrument was written at different times, such writing of his name in the formal commencement of the said instrument, by the said Samuel Adams, was not such a signing of the same by him, as was requisite, by the statute, to give effect to the same as a will.

The court instructed the jury, that the *writing* of his name, by the said Samuel Adams, in the attestation clause of the instrument offered as a will, was not a sufficient and legal signing of the same,

as a will, agreeably to the statute. The court farther charged the jury, that it was not necessary, either that the writing of his name, by the said Samuel Adams, in the beginning of the said instrument, should, in order to constitute the same a legal or sufficient signing of the said instrument, as a will, have been one simultaneous act with the writing of the whole instrument by him, or that the whole act, or intended instrument, should have been in his contemplation at the time of his writing his name in the beginning of the said instrument; and that, although the jury might find, that the said Samuel Adams wrote one part of said instrument at one time, and another part at another time, yet, if they should find, that the instrument commenced in his name, and was wholly written by him, and that, after it was completed, he produced the same to the three witnesses, and declared the said instrument to be his will in the presence of the three persons, whose names are subscribed as witnesses thereto, and requested them to witness the same, as his will, and that the said three persons subscribed their names to the said instrument in his presence, and also in the presence of each other, as witnesses to his last will and testament, they should also find, that the said instrument was well and sufficiently signed and executed by him, as a will, agreeably to the statute.

The jury returned, as their verdict, that the said instrument in writing was signed by the said Samuel Adams; and that the said instrument in writing was attested and subscribed agreeably to the statute, and is the last will and testament of the said Samuel Adams, deceased. Exceptions by appellant.

*L. C. Kellogg* and *E. N. Briggs* for appellant.

I. The proof of the signatures of the subscribing witnesses to the instrument offered for probate, by a comparison of their handwriting with genuine signatures, is admissible only when such genuine signatures otherwise belong to the case; and the admission of such genuine signatures on the trial, as evidence to be submitted to the jury *for the sole purpose of a comparison of hands,* was erroneous. *Doe d. Perry* v. *Newton,* 5 Ad. & E. 514, [31 E. C. L. 382.] *Bromage* v. *Rice,* 7 C. & P. 548, [32 E. C. L. 625.] *Griffits* v. *Ivery,* 11 Ad. & E. 322, [39 E. C. L. 104.] *Jackson* v. *Phillips,* 9 Cow. 94, 112. 1 Greenl. Ev. §§ 579–581. And the case of *Gifford* v.

Adams *v.* Field, Ex'r.

*Ford,* 5 Vt. 532, is not inconsistent with this rule; for in that case the signature, which was conceded to be genuine, and with which the comparison was made, was *otherwise* in evidence on the trial.

II. The charge of the court to the jury, as to the *signing* of the instrument offered for probate, was erroneous.

1. Our statute (which in this respect is, in substance, a transcript of the provisions of the English statute of frauds,) makes it essential to the validity of a testamentary paper of this character, that it should have been "*signed*" by the testator. The uniform and settled construction of those provisions of the statute of frauds, which require wills and certain other instruments in writing to be "*signed*,"—both in the English and American courts,—is, that the *signing* must be of the *name* of the testator, by his *personal act*, so that the name shall appear as a part of the instrument. *Selby* v. *Selby*, 3 Meriv. 2. *Hubert* v. *Moreau*, 2 C. & P. 528, [12 E. C. L. 248.] *S. C.*, 12 J. B, Moore 216, [22 E. C. L. 450.]

2. The signing by the testator, being an act essential to the perfection of the instrument, must also have been in execution of an intention on his part so to perfect it. Whether the writing of his name by the testator in the introductory clause was *the* act of signing, intended by him to perfect the instrument, is a question, which should have been submitted to the jury,

3. As to the signing of the notes, or *memoranda*, in writing, and of other instruments, required by the statute of frauds, and to which the same statute makes a signature essential, the settled principle resulting from the adjudicated cases is, that, if the name be inserted in such a manner, as to have the effect of authenticating the instrument, it is immaterial in what part of it the name be found;—" the ' question being always open to the jury, whether the party, not hav- ' ing signed it regularly at the foot, meant to be bound by it, as it ' stood, or whether it was left so unsigned, because he refused to ' complete it." *Per* Ld. ABINGER, C. B., in *Johnson* v. *Dodgson*, 2 M. & W. 659. Roberts on Frauds 121–123. 2 Kent 510. *Hubert* v. *Turner et al.*, 1 Car. & M. 351, [41 E. C. L. 194.] *Hubert* v. *Treherne et al.*, 3 Man. & Gr. 743, [42 E. C. L. 388.] *Stokes* v. *Moore et ux.*, 1 Cox 219. *Ogilvie* v. *Foljambe*, 3 Meriv. 52. *Davis* v. *Shields*, 24 Wend. 322. *Bayley* v. *Ashton*, 12 Ad. & E. 493, [40 E. C. L. 107.] But it must appear, that the, name, so

written, was regarded by the party as a *signature*, and that the instrument was regarded as complete, without farther signature. And where the name is introduced of necessity into the body of the instrument, to make sense of it, (as here, in the formal introduction to this instrument,) it should not be used over again as a signature. *Hubert* v. *Treherne et al., ub. sup.*

III. The court should have charged the jury respecting the signing of the instrument offered for probate as requested by the appellant.

1. "It is not the will, that is to be attested; but the act of the testator." *Per* Ld. ELDON, in *Wright* v. *Wakeford*, 17 Ves. 458. It may be collected, from the uniform tenor of the decisions on this subject, that the signature must be made *animo signandi*, and that the requirement of the statute can be satisfied only by such an act of signing, as is applicable to and in recognition of the whole substance of the instrument.

2. The writing of his name, by the testator, in the introductory clause could not be an act recognizing the whole substance of the instrument, unless the whole *factum* was simultaneous with it, and was also in his contemplation, at the time of his writing such formal introduction; and the exceptions show, that both of these qualifications are wanting in this case. *Coles* v. *Trecothick*, 9 Ves. 249. *S. C.*, 1 J. P. Smith's R. 233. Roberts on Frauds, 123, 383, note.

3. If a testamentary paper be imperfect, either in itself, or in the testator's apprehension of it, it could only be admitted to probate, in the English ecclesistical courts, on proof being furnished of his having been prevented by what is technically called the "act of God" from completing it. *Beaty* v. *Beaty*, 1 Adams 158. *Rhymes* v. *Clarkson*, 1 Phillim. 34. *Matthews* v. *Warner*, 4 Ves. 197 and *note*. *Walker* v. *Walker*, 1 Meriv. 503.

4. The *animus perficiendi*, or finality of intention, on the part of the testator, is always essential to the execution of a will; and if this instrument was imperfect, either in itself, or in the testator's apprehension of it, and he intended to sign it regularly at the foot, (or to do any other act,) to perfect it, but never executed such intention, it is incomplete, and should not be admitted to probate, as his will. *Right* v. *Price*, 1 Doug. 241. *Winsor* v. *Pratt*, 2 B. &

B. 650, [6 E. C. L. 499.] *Doe d. Williams v. Evans*, 3 Tyrw. 56.
*S. C.*, 1 Cromp. & Mees. 42. 2 Greenl. Ev. § 674. 1 Ib. § 272.
1 Steph. N. P. 552. 1 Pow. on Dev. (Jarman's Ed.,) 74–79.
*Sarah Miles' Will*, 4 Dana, (Ky.,) 1. *Waller v. Waller*, 1 Grattan, (Va.,) 454.

5. The rule of construction of that part of the statute of frauds
relating to the execution of wills, adopted in the case of *Lemayne
v. Stanley*, reported in 3 Levinz 1, and also in Freeman 538, was a
judicial evasion of the language of the statute and effectively repealed its provisions. In this light that case has been regarded by
the most approved elementary writers and judges. (1 Rob. on
Wills, c. 1, § 11. GIBSON, Ch. J., in *Dunlop v. Dunlop*, 10 Watts
(Penn.,) 153. The reports of that case are crude and contradictory, and one of its conclusions, that sealing without signing is sufficient, was long since denied and cannot now be regarded as law,
although it has never been expressly overruled. (*Wright v. Wakeford*, 17 Ves. 459. 1 Sugden on Powers, 7th Lond. Ed., p. 253,
note.) And where that case might be supposed to have authority,
it has been rendered nugatory by legislative enactments. The Revised Statutes of New York, (Vol. 2, p. 63, § 40,) the Wills' act
of Pennsylvania of 1833, and the recent English Wills' act, (1 Vict.
c. 26,) each require, that the *animus testandi* shall be unequivocally
manifested by the formal signature of the testator at the end of the
paper. See, also, 1 Greenl. Ev. § 272; 4 Kent 515, 516. Under
these circumstances, the authority of the case of *Lemayne v. Stanley* is not sufficient, to fasten upon us its admitted erroneous interpretation of the statute, or to prevent our courts from giving such a
direction to the current of decision on our own statute, as will entirely consist with the usual sense of its language and the obvious
intention of the legislature.

IV. The appellant contends, that the signing of a will, to be a
sufficient signing under the statute, must be such, as, upon the face
and from the frame of the instrument, will appear to have been intended to give it authenticity; that it must appear, that the name
written was regarded as a signature, and that the instrument was
regarded as complete, without farther signature; and that, if the
paper itself does not show this, or, if it is not signed by the testator
at the end, and there appears on the face of it an intention, on the

part of the testator, to do some other act, which is not done, it should be considered as wanting that character of *finality*, and that *conclusiveness of intention*, which are requisite to make it a will, and it ought not to be admitted to probate as such.

*R. Pierpoint* and *I. T. Wright* for appellee.

If the subscribing witnesses, or any of them, are dead, or out of the jurisdiction of the court, or deny the execution of the will and their signatures, the execution of the will and the subscriptions of the witnesses may be proved by other testimony ; and if the executor can prove, to the satisfaction of the jury, that the instrument was executed, published and attested as required by the statute, the will must be established. *Jackson d. Bowman* v. *Christman*, 4 Wend. 277. *Goodtitle* v. *Clayton*, 4 Burr. 2224. 1 Phil. Ev. 502. Pow. on Dev. 712. If the witness deny his subscription to the will, the same evidence is admissible, to prove that fact, that would be admitted, in any other case, to prove a signature. The opinion of witnesses, acquainted with the hand writing of the signer, is proper evidence to prove the fact of the signature ; and after the positive testimony of Jane Smart to the fact of attestation, and the testimony of witnesses acquainted with the hand writing, it was proper, in corroboration, to admit the genuine signatures to go to the jury, for the purpose of comparison. *Gifford* v. *Ford*, 5 Vt. 532. *Homer* v. *Wallis*, 11 Mass. 309, 312. *Hall* v. *Huse*, 10 Ib. 39. *Moody* v. *Rowell*, 17 Pick. 490. *Lyon* v. *Lyman*, 9 Conn. 55. 2 Greenl. R. 33. *Myers* v. *Toscan*, 3 N. H. 47. Cow. & H. Notes to Phil. Ev., Part 2, p. 1329. 2 Str. 1096. 2 Camp. 555.

The charge of the court was correct. It is immaterial, what were the intentions of the testator at the time he commenced his will, or what he then contemplated doing. If he wrote the whole instrument himself, and, after having completed it, produced it to the three witnesses, whose names are subscribed to it, and declared, in their presence, that. the instrument was his will, and requested them to witness it as his will, and it was subscribed by the three witnesses, in his presence, and also in the presence of each other, as witnesses to his last will and testament, it was well and sufficiently executed. *Lamayne* v. *Stanley*, 3 Levinz 1. *S. C.*, 3 Mod. 219. 1 Eq. Cas. Abr. 403-9. Pow. on Dev. 61, 1 Ves. 11. 4

Adams *v.* Field, Ex'r.

Com. Dig. 126, n. Taml. Ev. 191. Steph. N. P. 1984. 20 E. C. L. 197. 19 Ib. 91. 35 Ib. 335. 1 Sw. Dig. 135. Rob. on Frauds 123. 8 Vin. 122. Sugd. on Vend. 54. 2 B. & P. 239. 2 Bl. Com. 376. 4 Kent 515. 3 Stark. Ev. 1683. 18 Ves. 183. 1 Vern. 11. 7 Bac. Abr. 311, 329.

The opinion of the court was delivered by

BENNETT, J. The only question saved in the county court, in relation to the admission or rejection of testimony, which has been insisted upon in this court, is the one in relation to the comparison of hands. In England it was long held, that a comparison of hand writing was not admissible; but I think, that rule has been modified by modern decisions; and at the present day it would seem their courts admit in evidence comparison of hands, but confine it to documents, which are proved to be genuine, and which are in evidence on the trial of the cause for other purposes.

We, however, in common with several of our sister states, have introduced a broader rule, and have permitted documents, which are proved to be genuine, and which are not otherwise in evidence, to go to the jury, for the purpose of comparison of hands. The genuineness of the document, however, which goes to the jury for the purpose of comparing the contested document with it, must either be admitted, or else established by clear, direct and positive testimony. Unless this is in the first instance done, the testimony should, for obvious reasons, be excluded.

I think it may safely be said, that for at least the last twenty five years our courts, at *nisi prius,* have admitted the same kind of testimony, as was admitted in the county court; but probably the decisions may not have been uniform. The first time I have known the question before the supreme court was in the case of *Butler* v. *Dixon,* decided in Chittenden County in 1832, (not reported.) Since that time I had supposed the question was at rest. In the case of *Gifford* v. *Ford,* 5 Vt. 535, comparison of hands was again admitted in evidence. It is true in that case the two signatures, which were compared one with the other, were otherwise put in evidence; but no importance was attached to that circumstance.

If this question were *res integra* with us, we should be satisfied with the ruling of the county court. See *Hammond's Case,* 2

Greenl. R. 33. *Lyon* v. *Lyman*, 9 Conn. 55. *Homer* v. *Hollis*, 11 Mass. 309. *Moody* v. *Rowell*, 17 Pick. 490. *Richardson* v. *Newcomb*, 21 Pick. 315. The leading reason, assigned in England for the exclusion of this kind of testimony, viz., that their jurors could not read or write, does not exist with us ; and if it existed, when the rule was established, it was a sufficient reason, why the law was so ruled in those early days. Our jurors are made up of men competent to compare hand writing ; and, as matter of daily experience, we know, that comparison of hand writing is at once resorted to, when the mind wishes to satisfy itself in regard to the genuineness of a writing in dispute.

The remaining questions arise under the charge of the court ;— and the first is, what will satisfy the *statutory requirement* of signing ? Was the name of this testator in the beginning of the will a sufficient singing, to satisfy the statute ? In the case of *Lemayne* v. *Stanley*, 3 Lev. 1, the will was in the hand writing of the testator, and such a signing was held sufficient, within the statute of 29 Charles II., which required all wills of land to be signed. In that case, as in this, the will commenced, " I, John Stanley, make," &c. After that decision, the law was regarded as settled in England ; and the case of *Lemayne* v. *Stanley* has not only since been followed in that country, but also in our sister states, which have, by legislative enactment, adopted the statute of Charles II. The rule was so effectually established, that courts of justice, though repeatedly solicited, could not be induced to break in upon it. In England they have found, that a statute was necessary to change the law in this particular ; and in the reign of the present Queen one has been passed, requiring a will to be signed at its foot. The same has been done by some of our neighboring states.

It was said in England, and the same has been said in the argument of this cause, that the case of *Lemayne* v. *Stanley* was an *evasion* of the statute and opened a door for the perpetration of frauds, and was so nonsensical, that it ought not to be followed. If that decision had the effect to open a door for the commission of frauds, this certainly is a cogent reason, why it should not have been made in the first place, or since followed. But I am not aware, that such has been its effect. Where the whole will is in the hand writing of the testator, and is attested by three witnesses

34

in the presence of the testator, and published by him, as his last will, in their presence, it is difficult for me to see, how the fact, that the signing at the top of the will is held a sufficient signing, can open a door to fraud.

It must be shown, that the will possesses *finality*, before it can be operative; and to give it this quality, the testator must, at least, at the final execution of the will, adopt the writing of his name, at the beginning of the will, as a signing, and so intend it. I think in New York they have, or have had, a statute, which requires a will to be *subscribed* by the testator; and this, their courts have said, requires a will to be signed at the foot. This was doubtless according to the etymology of the word *subscribed*; though, if I mistake not, the supreme court of that state held, that the introduction of the word *subscribe* in their statute, instead of *sign*, should not change the construction from that, which had been given to the statute of Charles II.; but the court of errors thought otherwise. The etymology of the word "*sign*" does not necessarily require the signing to be at the bottom of the instrument; and it is much a matter of taste, as to the place of signing. If the question were *res integra*, we might think the bottom of the will was the place, where the statute intended it should be signed by the testator; but to me it seems rather immaterial, in which place the will is signed, provided it is shown to have the necessary *authenticity*.

The law, as established in the case of Stanley's will, has become a rule of property; and *stare decisis* seems wisest to me. When our statute of wills was enacted, the statute of Charles II. had received a long, fixed and well known construction; and when we adopt an English statute, we take it with the construction, which it had received,—and this upon the ground, that such was the implied intention of the legislature. We think the case of *Lemayne v. Stanley* should be binding upon this court. To impugn or overthrow it would be to impugn or overthrow a rule of property, which has long been settled and acted upon. This should never be done, unless upon the most urgent necessity.

The case of *Lemayne v. Stanley* does not stand alone. In *Knight v. Crockford*, 1 Esp. N. P. Cas. 190, it was held, that where a writing began, "I, A. B., agree," &c., it was a sufficient signing, within the statute of frauds; and there are other cases to the like

Adams *v.* Field, Ex'r.

effect, which, in principle, are like the case of *Lemayne* v. *Stanley.* See 1 Jarm. on Wills 70.

The counsel for the appellant seem constrained to admit, in substance, that the signing of a will at the beginning may, if so designed, be a sufficient signing, within the statute of Charles II.; but they insist, that, in the case before us, the testator intended to sign this will at the foot, and that consequently the will was incomplete and wanting in *finality*, until it was so signed.   I think it is hardly possible not to see, that, at the time the testator inserted his name at the beginning of the will, a farther signing of it was in contemplation, before it should have *authenticity;* and if the jury have not, by their verdict, found the will to be complete and finished at the time of its publication, it should not have been established.   In the treatise, Modern Probate of Wills, page 154, the writer says, " Although the testator may have commenced his will thus, I, A. B., make, &c., with an intent of repeating his signature at the end of the will, yet if he subsequently acknowledge the instrument, as his will, to the attesting witnesses, without allusion to the signature, we presume, that the will was sufficiently signed."   In 1 Jarm. on Wills, p. 70, it is said, " If the testator contemplated a farther signature, which he never made, the will must be regarded as unsigned;"—and so, doubtless, are the authorities, as well as the reason of the thing.   But he well remarks, that the reasoning seems only to apply, where the intention of repeating the signature remained unchanged to the last ; for a name, originally written with such design, might afterwards be adopted by a testator, as the final signature ; and such, the writer says, " would probably be the presumed intention, if the testator acknowledged the instrument, as his will, to the attesting witnesses, without alluding to any farther act of signing."

We think this is a sound view of the subject.   If the will, as the jury must have found in this case, was attested by three witnesses in the presence of the testator and in presence of one another, and *published* by the testator in their presence, as his last will and testament, it was to all intents and purposes an adoption of such a signature, as was then affixed to the will ; and if the will then had such a signature, as could be held sufficient under the statute, nothing farther need be done.   The will then becomes *complete*, and pos-

sesses all the *finality*, which can be required. It is the same thing, in effect, as if the signature had been originally made *animo signandi*.

The case of *Hubert* v. *Treherne*, 42 E. C. L. 388, is regarded by the appellant's counsel as a leading case, to show that this will was incomplete. The names of the parties to the agreement were stated in the beginning of the articles; and it concluded, " as witness our hands," but no signatures followed. The court, it is true, held, that this agreement was not signed, within the statute of frauds, for the reason, that the words " as witness our hands" imported, that a farther signing was intended. I fully accord with this decision; but it should be remembered, that there was nothing in that case to show an adoption of the signatures, in the commencement of the articles, as the *final signatures*. TINDALL, Ch. J., says, " There was no sufficient original signing, and no *subsequent recognition*." COLTMAN, J., remarks, " that there was no sufficient authority to give out the copy, in behalf of the party to be charged with the agreement"; and ERSKINE, J., says, " he is not prepared to say, that, if the articles had been delivered by any proper authority, the signing would not have been sufficient." Had the case shown a subsequent recognition .of the articles, I can have but little doubt, the decision would have been different.

The cases of *Sanderson* v. *Jackson*, 2 B. & P. 238, and *Schneider* v. *Norris*, 2 M. & S. 286, rest upon the ground of a subsequent recognition. Though the case of *Johnson* v. *Dodgson*, 2 M. & W. 659, is much relied upon by the appellant, yet it recognizes all the principles necessary to sustain the charge of the county court. Lord ABINGER remarks, that the cases have decided, that, although the signing be in the beginning or middle of the instrument, yet it is as binding, as if it were at the foot,—the question being always open to the jury, whether the party, not having signed it regularly at the foot, meant to be bound by it, as it stood, or whether it was left so unsigned, because he refused to complete it. This principle we apply to the case before us. The jury have found, that the testator produced the will in question to the witnesses, and declared it to be his will, and requested them to witness it, as his will. This shows, that the testator did not then contemplate a farther signing of the will, and is, in effect, a finding by the jury, that the testator

adopted the instrument, as it was then signed, as his will; and if so, then the *signing* was sufficient, to satisfy the claims of the statute.

It might, perhaps, have been urged, with some propriety, that, though this will contains the usual *ad testimonium* clause, yet that, upon its face, it furnishes no evidence from that circumstance, that a farther signing was intended, at the time the testator drew up his will. This clause is written on the original will, it appears, so close to the seal, that there is no room for his signature opposite to the seal, or very near to it; but as the case was not put to the jury upon any such ground, it is not necessary to consider it. The case is right, going upon the ground, that the *ad testimonium* clause to this will furnished evidence, *prima facie,* that, at the time it was written, a farther signing was in the mind of the testator.

The case of *Waller* v. *Waller,* 1 Grattan (Virginia) 454, has been pressed upon us; but we cannot accede to the doctrine of that case. It is there said, that the *finality* of the *testamentary intent* must be ascertained from the face of the paper; and that, to constitute a sufficient signing, under their statute, it must appear from the frame of the instrument, and upon its face, that the signing was intended to give it authenticity as a signature, and that it was complete without any farther signature; and *that the paper itself must show all this.* We think, that, unless there is something peculiar in the statute of that state, this case is unsound, and stands opposed to the whole current of decision under the statute of Charles II.

The case of *Sarah Miles' Will,* 4 Dana 1, which the appellant has referred the court to, contains the sound doctrine on this subject. Her will was drawn by a neighbor, at her request, and under her dictation, and commenced thus, "In the name of God, *I, Sarah Miles,*" &c., and concluded with the usual *ad testimonium* clause. It was read to and approved by her, but not then signed, or attested. After this she acknowledged the paper, as her will, in the presence of the witnesses, who attested it in her presence and at her request,—she being at that time unable to write. The principle adopted by the court was, that though her name in the beginning of her will was not intended, when written, to be her signature, yet, as it was so designed at the time of the publication, and there was then no intention on her part farther to sign her will, it was a sufficient signing within their statute, which was a copy of the English statute. This is in accordance with the English cases.

It has been argued, that the writing of the testator's name in the beginning of the will could not be an act recognizing the *whole substance* of the instrument, unless the *whole factum* was simultaneous with it, and was also in the contemplation of the testator, at the time he wrote his name. It may be true, that, when the signing the name in the beginning of the will is, in and of itself, to be taken as a signing of the will within the statute, without any subsequent recognition, it must appear, that the testator had the *whole object* of the instrument in prospect, when he wrote his name, and that the instrument must be completed by one simultaneous act; yet suppose it be so,—it cannot apply to a case like this. Here the signature did not become a sufficient signature, within the statute, until it was adopted as such, at the time of the publication of the will; and then the whole subject matter of the will was in the mind of the testator, and the will was completed by one simultaneous act.

Since the cases of *Ellis* v. *Smith*, 1 Ves. Sen. 11, and *Carleton* v. *Griffin*, 1 Burr. 549, the law has been settled, that the testator need not in fact sign the will in the presence of the attesting witnesses; and it is there held, if the will be so signed, that it can in any event satisfy the statute, and the testator declare it to be his will before three witnesses, that this is equivalent to signing it before them, and satisfies the statute.

This case has been very fully examined by the counsel, and every consideration has been urged, that could bear upon the question before us; and we may well admire the learning and ability, which have been displayed in the argument; yet we do not feel at liberty to depart from well established landmarks. The statute of Charles II. had received a settled construction, when our statute was passed; and we must regard that construction as binding upon us. If we should change a rule of property, because we might think that the more obvious and popular meaning of the word *sign* might import a signing of the instrument only at its foot, we should, in my opinion, be far from duty.

The result is, the judgment of the county court is affirmed.