## NATIONAL LAND AND LOAN CO. *v.* JOHN A. MEAD.

### *Constitutional Law.*

The Constitution does not require the governor to sign a bill at its end in order that it may become a law; it is sufficient if he approves it and signs it in any place intentionally and understandingly; thus, when he signed a bill at the end of the second section, and on discovering his mistake erased his name and failed to subscribe the bill until after the time for signing bills had elapsed, it was held, to be a valid law.

Action of assumpsit upon a subscription to the capital stock of the plaintiff corporation. Plea, *nul tiel* corporation. Trial in the municipal court of Rutland, Lawrence, J., presiding.

Judgment *pro forma* for the defendant.

The plaintiff offered in evidence a copy of its act of incorporation, certified to by the secretary of state, as follows :

" STATE OF VERMONT, }
Office of Secretary of State. }

" I hereby certify that the foregoing is a true copy of a document entitled ' An Act to Incorporate the National Land and Loan Company,' now in this office ; and that the words ' Approved Nov. 25, 1884, Sam'l. E. Pingree, Governor,' were written thereon by said Sam'l. E. Pingree on the 25th day of March, A. D. 1885."

It appeared by the journals of the senate and house of representatives for the biennial session of 1884, of the General

17

Loan Co. *v.* Mead.

Assembly, that Senate Bill 159 entitled "An Act to Incorporate the National Land and Loan Company" was passed by the senate and house of representatives in due form, and that the governor in a message to the senate, through his secretary of civil and military affairs, announced in due form that on the 25th day of November, 1884, he had approved and signed said bill; and that such action of the governor was duly communicated from the senate to the house of representatives.

The plaintiff also introduced the affidavit of Samuel E. Pingree, and the court found the facts as therein stated to be true.

Gov. Pingree's affidavit:

"I was the governor of the State of Vermont during the biennial term commencing in October, 1884. During the last days of the session of the General Assembly of 1884 a bill originated in the senate entitled 'An Act to Incorporate the National Land and Loan Company,' and which had passed both houses, was sent to me for my approval. I examined the same carefully and found it approvable and signed it, and my approval was duly transmitted to the senate through the secretary of civil and military affairs. I signed the bill under the signatures of the president of the senate and speaker of the house; but after I had signed it, it was discovered that they had signed at the bottom of the first page of the bill, being at the end of section two. I intended to approve and did approve the entire bill; and that all things might be regular in regard to the bill, when it was found out that the president of the senate and speaker of the house had not signed at the end of the bill, I erased my signature and the bill was sent specially to them to sign at the end and after that was done I intended to replace my signature at the end. The president of the senate and speaker of the house did sign the bill at the end in regular manner and it came back for me to replace my signature at the end; but in the hurry of the last hours of the session it was sent to the office of the secretary of state without being clerically completed on my part. I intended to have replaced my signature at the end of the bill before it was sent to the secretary of state, but after the session was finally adjourned my attention was called to this bill and the fact that I had not done so, and some time in March, 1885, while at Montpelier,

I replaced my signature in regular form at the end of the bill and wrote the words, ' Approved Nov. 25, 1884, Sam'l Pingree, Governor.'                    SAM'L E. PINGREE."

*Edward Dana* and *W. C. Dunton*, for the plaintiff.

Governor Pingree knowingly and intentionally approved and signed the bill.

This was all that was necessary after the bill had been passed by the two houses for it to become a law.   Const. Vt. Art. 11.

Any signing with the intention of signing in approval is sufficient, whether at the end or in any other part of the bill. Brown Stat. Fra. Sec. 357; *Brink* v. *Spaulding*, 41 Vt. 98; *Adams* v. *Field*, 21 Vt. 256, 266.

The governor having duly approved and signed the bill within the time limited by the Constitution, it became a law, and having once become a law it could not be repealed and become of no effect simply because the governor afterwards desired his signature to be placed at the end in the more regular manner, and erased his name for the purpose of afterwards replacing it at the end.

*P. R. Kendall*, for the defendant.

The erasure of the governor's signature caused the secretary of state not to print the act among the laws, and it may well be doubted whether the bill ever became a law.   Const. Vt. Art. 11.

In the case of *Fowler* v. *Pierce*, 2 Cal. 165, an act passed on the last day of the session was presented to the governor on the same day and purported to have been approved on that day.   It was shown by parol that it was not approved on that day, but on the next day.   Held that the act was void.   12 U. S. Dig. 702, s. 34.

In the case of *People* v. *Hatch*, 19 Ill. 283, an act was signed by the governor by mistake and a message was delivered to the house of representatives by his private secretary, announcing his approval, and this was not done by the special

direction of the governor, but according to usual routine of business, because he had found it on the governor's table, with his signature attached. The governor, within thirty minutes of the message, sent a notice of the facts to the speaker of the house, which he read aloud. The act was returned with the governor's signature erased and with his objections thereto. Held that the act never became a law.

In the case at bar, it would seem that only a part of the bill was signed.

The opinion of the court was delivered by

VEAZEY, J. The Constitution of this State is as follows : " Every bill which shall have passed the senate and house of representatives, shall, before it becomes a law, be presented to the governor ; if he approve, he shall sign it ; if not, he shall return it, with his objections in writing, to the house in which it shall have originated ;" etc.

This bill passed both the senate and house, was presented to the governor, was carefully examined by him, and was by him approved and signed intentionally and understandingly. The bill thereby became a law. That which took place afterwards did not annul this enactment. It was not even so intended if the power existed. The governor did not attempt to withdraw his approval. The place of signing was as effectual as though it had been at the end of the bill, the fact appearing that it was intended as a signing and approval of the entire bill. *Brink* v. *Spaulding,* 41 Vt. 98 ; *Adams* v. *Field,* 21 Vt. 256. The Constitution does not require that a bill shall be signed at the end, or subscribed.

The *pro forma* judgment is reversed, and judgment rendered for the plaintiff.