HAYNE v. WOOLLEY et al.

(Circuit Court, W. D. North Carolina. August 1, 1910.)

COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY—EVIDENCE.

Evidence *held* to show that damages 'sought to be recovered in an action did not exceed $2,000 exclusive of interest and costs, so as to give the Circuit Court jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 328.*

Jurisdiction of Circuit Court as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

Action by Frank B. Hayne against R. J. Woolley and another. Petition by defendants for a writ of habeas corpus. Defendants discharged.

Merrick & Barnard, for plaintiff.
Judge H. G. Ewart, for petitioners.

PRITCHARD, Circuit Judge. The defendants were brought before me on a writ of habeas corpus by the United States marshal for the Western district of North Carolina, on the 4th day of January, 1910. The marshal's return of the writ is in the following language:

"J. M. Baley, answering the writ of habeas corpus in the above-entitled matter by the Honorable J. C. Pritchard, Circuit Judge of the United States, on the fourth day of January, 1910, says: That he is the United States marshal for the Western district of North Carolina and holds in his custody the petitioners, R. J. Woolley and Craton Whitaker, by virtue of a warrant or order of arrest issued by the Honorable W. S. Hyams, clerk of the United States Circuit Court for the Western district of North Carolina, at Asheville, N. C., copy of which is hereto attached and asked to be taken as a part of this answer or return. That he is advised, informed, and believes that it was his duty to arrest and hold the said petitioners under said process issued by the said court, as aforesaid, and is advised and believes that the said order of arrest is regular and lawful in all respects and not in violation of the Constitution or laws of North Carolina, nor of the United States. That he is further advised and believes that the petition of the petitioners should be denied, and they are not entitled to their discharge from custody of this respondent. Your respondent conceiving that he has no discretion in the matter holds and detains the petitioners in his custody as by the said precept he is commanded to do. That the order of arrest, hereinbefore mentioned, and the imprisonment and restraint of said petitioners Woolley and Whitaker are based upon an affidavit of A. R. Ogburn, the authorized agent of F. B. Hayne, of New Orleans, as is set forth in petitioners' petition, and a copy of this affidavit is hereto attached and asked to be taken as a part of this answer or return of respondent to the writ of habeas corpus. That said F. B. Hayne has instituted in the Circuit Court of the United States at Asheville an action at law against said petitioners, as is shown in the affidavit of said A. R. Ogburn, above mentioned, that this respondent alleges, upon information and belief, that the arrest of said petitioners is in all respects lawful and not illegal as charged in petitioners' petition. That it is true, as alleged in petition, that bail in the amount of ten thousand ($10,000) dollars has been required of said petitioners by the clerk of the United States Circuit Court for the Western District of North Carolina, but not by A. R. Ogburn, as charged in' petitioners' petition, and this respondent is advised, informed, and believes, and avers, that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said clerk had the lawful authority to require said bail, and alleges, on information and belief, that the amount of same is not excessive or unreasonable, as charged in petitioners' petition, and that said arrest is fully warranted by the laws of the state of North Carolina, and is in all respects lawful and just. That a copy of the bond required of respondent by said clerk is hereto attached and asked to be taken as a part of this answer or return. * * * "

It appears from an examination of the record in this case that on the 20th day of December, 1909, A. R. Ogburn, as agent of the plaintiff in the above-entitled action, filed with the clerk of this court an affidavit in which, among other things, he stated that the plaintiff had instituted an action in the Circuit Court of the United States for the Western District of North Carolina, at Asheville, N. C., against the defendants, R. J. Woolley and Craton Whitaker, for the possession of certain real property belonging to the plaintiff, situated in Henderson county, N. C., and within the Western district of said state, known as the "Johnston or Morris place," and commonly called "Beaumont," describing the same by metes and bounds. Affiant further alleged:

"* *. * And for damages against said defendant for the wrongful, unlawful, willful, and unjust detention and use of a part thereof, to wit, the stable lot, stables, and barn and outhouses within the stable lot on said premises, or a part of the same, and for the wrongful, unlawful, willful, and unjust conversion of the same to their own uses and purposes, contrary to the will and over the protest of the said plaintiff, and in spite of the said plaintiff's repeated efforts to regain possession of the part of said premises so used and occupied by said defendants, as aforesaid, and without any shadow or pretense of right, title, interest, or estate in and to the same in the said R. J. Woolley or Craton Whitaker, or any other person for their benefit or for the benefit of either of them. That the said Woolley and Whitaker have taken possession of a part of the stable lot and the inclosure surrounding the same, including the stable, barns, and certain outhouses within said inclosure, as aforesaid, and are attempting to exercise exclusive dominion and control over the same. That they have locked the gates leading into said inclosure, and have forbidden the agents and representatives of the plaintiff to enter therein, and have actually had this affiant and certain assistants of his arrested on a warrant, charging them with forcible trespass in attempting to enter said inclosure, and to take possession thereof in the name and for the benefit of the said Frank B. Hayne. That said trial was set for hearing before a justice of the peace of Henderson county on December 14, 1909, and said affiant and his said assistants were bound to the next regular term of the superior court of Henderson county for the trial of criminal cases, beginning March 7th next in a penal bond of $500. That said Woolley has a great number of cattle in said stable lot which he and said Whitaker for him turn out every day, as this affiant is informed and believes, into the fields of said 'Beaumont' property, and they daily inflict considerable damage upon said plaintiff's freehold, without any shadow or pretense of right, title, interest, or estate in the said Woolley or his codefendant, as aforesaid. That this affiant is the lawfully constituted agent and representative of the said Frank B. Hayne, heretofore fully authorized by the said Hayne to take full and exclusive possession of the farm and premises called 'Beaumont,' as aforesaid, and to hold possession thereof in the name of said Hayne and for his benefit. And the facts set forth in this affidavit are within affiant's own knowledge, except as to those facts stated on information and belief, and as to those facts affiant has learned of them through reliable and responsible persons, and not otherwise, that said Frank B. Hayne, the plaintiff in the above-entitled action, is a resident of the city of New Orleans, in the state of Louisiana, and of the United States of America, and the defendants, R. J. Woolley and Craton Whitaker, are each a citizen and resident of Henderson county, in the state of North Carolina; said county being within the Western district thereof."

In pursuance of the foregoing affidavit, the plaintiff applied to the clerk of this court for a warrant of arrest, under the provisions of subsection 1, § 727, Pell's Revisal (N. C. Law) 1908. The subsection in question reads as follows:

"* * * (1) In an action for the recovery of damages, on a cause of action not arising out of contract, where the defendant is not a resident of the State, or is about to remove therefrom, or where the action is for an injury to person or character, or for injuring, or for wrongfully taking, detaining or converting property, real or personal."

When this statute was first enacted, it did not contain the words "real or personal"; but the Legislature at its session in 1891 (Pub. Laws 1891, c. 541) amended the statute by adding the words "real or personal." Prior to the amendment, the case of Bridgers v. Taylor et al., 102 N. C. 86, 8 S. E. 893, 3 L. R. A. 376, was passed upon by the Supreme Court of that state, and Judge Shepherd, who delivered the opinion of the court, in referring to this phase of the question said:

"It is urged that there is no more reason why one should be arrested for injuring a horse, or other personal property, than for burning a house, cutting down trees, and committing other injuries to real estate. To this it may be said that personal property is more perishable in its character, and that injuries to it may be sufficient to wholly impair its value, before the courts can stay the hand of the destroyer, while no considerable damage can be done to real property before the preventive power of the law can be invoked. It may also be said that real estate is peculiarly protected by the criminal law, and that the Legislature could not have intended to subject to arrest and imprisonment one who, honestly mistaking his boundary, commits some slight injury to the land of his neighbor—which could be done if the construction contended for prevails. But the most conclusive answer to such suggestions is that it is not our province to speculate as to what the law should be, but to construe it as it is made. The inquiry then is whether, by the ordinary rules of construction, the statute under consideration warrants an arrest for injuries to real property. Section 3765, paragraph 6, of the Code, provides that the word 'property' shall include all property, both real and personal, and that this construction shall be observed unless it would be inconsistent with the manifest intention of the General Assembly, or repugnant to the context of the same statute.' The foregoing definition of 'property' and section 291 of the Code are exact copies of the New York Code upon the subject. The construction of this language, therefore, by the Court of Appeals of that state, is entitled to great weight with us, and we cannot do better than to quote the words of Hunt, J., in delivering the opinion of the court in Merritt v. Carpenter, reported in 3 Keyes [N. Y.] 142, overruling the decision of the Supreme Court in that case. It is true that that case was an action for the possession of land and for damages for withholding the same, but the learned judge carefully considers the whole section and concludes that none of its provisions are applicable to real property. He says:

" 'The following words, "taking" and "converting," would neither of them be appropriate in speaking of real property; one may be readily understood when he says that an action may be sustained for taking personal property, or for converting it, or for taking and converting it, but the words would convey no legal idea when applied to real estate. There is a broad sense in which the word "detaining" might be applied to real estate, of which the expression, "forcible entry and detainer," is an illustration. Such was not, I apprehend, the meaning of its codifiers in its present connection. The expressions, injuring, taking, detaining, and converting, are well used in the same sentence, and, apparently, as applying to the same subject-matter. Three of these words I have endeavored to show are not applicable to real property, and, if the fourth was so intended, the use of the language was singular-

ly unfortunate. I think the words (the italics are ours) *were all intended to be applied to personal property only.'*

"We adopt the reasoning of this learned judge in the interpretation he has given us; but, if we were doubtful as to the correctness of his conclusions, there is a well-settled rule of construction, which, when applied to this case, relieves us from all difficulty. It is conceded that the section under consideration was taken from the New York Code of Civil Procedure. Its language, as we have seen, was construed in Merritt v. Carpenter, supra, in 1866, and it was enacted by the General Assembly of North Carolina in 1868.

"Dwarris on Statutes, 274, says: 'That words and phrases, the meaning of which, in a statute, has been ascertained, are, when read in a subsequent statute, to be understood in the same sense.'

"In the note of Judge Potter, on the same page, it is said that: 'Where the terms of a statute which have received judicial construction are used in a later statute, whether passed by the Legislature of the same state or country, or by that of another, that construction is to be given to the later statute. Com. v. Hartnett, 3 Gray [Mass.] 450; Ruchmabaye v. Mottichmed, Eng. L. & Eq. 84; Bogardus v. Trinity Church. 4 Sandf. Ch. [N. Y.] 633; Rigg v. Wilton, 13 Ill. 15 [54 Am. Dec. 419]; Adams v. Field, 21 Vt. 256. It is presumed that the Legislature which passed the later statute knew the judicial construction which had been placed on the former one, and such construction becomes a part of the law.' "

Subsequent to the decision of the Supreme Court in the above case, the Legislature, as I have said, amended the statute by adding at the end of the paragraph the words "real or personal." There has been no decision of the Supreme Court of North Carolina since this amendment, but I doubt very much if that court would hold that a case like the one at bar is within the purview of the statute.

At the time of the hearing, no complaint had been filed in the clerk's office, and it was, therefore, impossible to ascertain the amount claimed as damages on account of the detention of the property in question, nor was there any allegation, by affidavit or otherwise, as to the value of the premises; and, as will hereinafter appear, the defendants set up no claim of title to the same, but admitted that the complainant was the legal owner thereof.

It will be observed that the portion of the statute under which this proceeding was instituted, that pertains to real property, reads as follows:

" * * * Or for wrongfully taking, detaining, or converting property, real or personal."

It appears from the affidavit of R. J. Woolley that his mother, L. J. Woolley, on the 23d day of August, 1909, sold and conveyed to the plaintiff the tract of land in question; that under the terms of the sale the said L. J. Woolley agreed to deliver the possession of the residence on the 15th of October, 1909; that prior to the delivery of the deed the plaintiff agreed with the said L. J. Woolley, through her agent, E. W. Ewbank, to permit her, her agents or tenants, to occupy the barns, stables, etc., until the spring months, in consideration of the said Woolley giving up possession of the residence upon said property; that at the time this agreement was entered into affiant had 30 head of cattle which belonged to his mother, and which, up to the time of the institution of this proceeding, he had not been able to sell at any figure approximating their value; that he had made every effort to dispose of the cattle, and had repeatedly advised the agent of the plaintiff that

he would vacate the barns and outbuildings occupied by him and in his possession as soon as he could dispose of the cattle; that in any event he would vacate the entire premises by the last of April, 1910; that in pursuance of said agreement the residence was promptly vacated by the 15th day of October, 1909; that the employés of the plaintiff are now, and have been for several weeks, in possession of the same, and relying upon the assurances and promises of the plaintiff to the said L. J. Woolley, affiant, as her agent, has used the barns for housing the cattle and the smaller cottages and outbuildings for himself and employé, Craton Whitaker; that the allegation of A. R. Ogburn to the effect that defendant is daily turning his cattle out on the valuable meadows of the said Hayne is not true, nor is it true that he has in any way damaged or injured the property of the said Hayne; that the allegation that affiant has locked up the gates leading to the residence and inclosures, and has forbidden the agents of Hayne from entering upon the said premises, is not true. Affiant further states that W. P. Bane, a contractor, employed by Hayne, is and has been for several weeks engaged in remodeling the residence; that he has never, at any time, forbidden the agents or employés of Hayne from exercising the full right of entry upon all parts of the premises.

There was also an affidavit filed by defendant Craton Whitaker, who, in substance, stated that he was employed by Mrs. L. J. Woolley, and occupied a small house on the premises; that he has never at any time been notified by the said Hayne or any of his agents or representatives to deliver possession of the house; that affiant has never, at any time, injured any of the property or the said premises, or converted any of the same to his own purposes.

E. S. Fisher also filed an affidavit in which he stated that the lands known as "Beaumont," where the cattle of Mrs. Woolley were pastured, had been used as a pasture for the last five years during the winter months by Mrs. Woolley, and that the said lands had been greatly benefited by the cattle running on them, and that the productive capacity of the lands had been thereby greatly increased, and that the valuable meadows alluded to in Ogburn's affidavit had grown up in weeds during the past summer, and, without cultivation, could not be called meadows.

E. W. Ewbank filed an affidavit in which, among other things, he says: That he was the agent of the said L. J. Woolley, the mother of the petitioner in this cause, R. J. Woolley, when she sold the premises known as "Beaumont," near Flat Rock, in Henderson county, N. C., to F. B. Hayne, of New Orleans, La. That the said L. J. Woolley told affiant it would not be possible for her to remove her cattle from the premises by the 15th day of October, 1909; that she would require more time for that purpose, but did not state to him how much more time she would require. That affiant had a conversation with F. B. Hayne in which he communicated to the said Hayne this information. That the said Hayne replied that it was not so material as the possession of the house, that he would not need the farm until spring, and further indicated by his talk that he would indulge the said L. J. Woolley, in case she could not promptly remove her cattle from the premise

on or before the 15th day of October, 1909; but that affiant understood from what L. J. Woolley told him that she would make preparation for the removal of the cattle as rapidly as possible after the 15th day of October, 1909, and that she would accomplish the removal as quickly as possible, and affiant had no idea that she even desired the premises as long as the 1st day of January, 1910, or any other particular date. That affiant never entered into any contract on behalf of L. J. Woolley with F. B. Hayne or any other person whereby the said Hayne at all bound himself to allow the said Woolley, or anyone representing her, to remain in possession of the farming part of said property until spring, or for any other definite time, and, in fact, no sort of contract was made by Hayne with Mrs. Woolley whereby he agreed that she should keep any part of the premises beyond the 15th day of October, 1909; but affiant understood that the said Hayne would indulge said Woolley if she found it impossible to remove her cattle by said date. That affiant has never represented the said Hayne, and has never attempted to make any contract for him, but in this entire transaction was acting on behalf of the said L. J. Woolley. That this affiant informed Hon. H. G. Ewart, counsel for petitioners in this case, of the facts of this transaction some time prior to the institution of the action by F. B. Hayne in the Circuit Court of the United States for the Western District of North Carolina, at Asheville. That affiant understood that R. J. Woolley would be advised to vacate said premises at once. That this conversation between H. G. Ewart and affiant occurred about the time the agents of F. B. Hayne were arrested for attempting to take possession of the stable lot and buildings on the premises, or shortly thereafter. That he has no interest of any kind in the outcome of the present controversy, or the controversy between F. B. Hayne and R. J. Woolley, but makes this affidavit at the request of counsel for the respondent, and that he offered to make the same sort of affidavit for counsel for petitioners. That from F. B. Hayne's statement that he would not need the farm until spring affiant inferred that his indulgence referred to that part of the farm occupied by L. J. Woolley's cattle.

Other affidavits were filed, but the foregoing comprise substantially the evidence offered bearing upon this controversy.

The statute under which the defendants in this proceeding were arrested is summary in its character, and among other things is intended to afford relief for injuring, or for wrongfully taking, detaining, or converting property, real or personal. I doubt very much if this statute was ever intended to apply to a case like the one at bar. But, be that as it may, it clearly appears from the evidence that the damages sought to be recovered by the plaintiff could not, in any event, amount to more than $200 or $300. The actual damages to the premises—and the only damages of which any evidence was offered—is such damage as may have resulted from permitting the cattle to run at large upon the fields or meadows of the plaintiff during the fall and winter seasons. The damage in this respect, if any, would be very slight. It is a matter of common knowledge that, in many instances, land is improved, rather than damaged, by permitting cattle to run upon it.

It nowhere appears, by affidavit or otherwise, that the damages sought to be recovered in the suit instituted on the law side of this docket are in excess of the sum of $2,000, exclusive of interest and costs, while, on the other hand, I find as a fact that, in no event, could the damages to the premises in question amount to a sum in excess of $500.

It is true that plaintiff insists that he is being damaged, in that he is not permitted to have access to the barns and buildings occupied by one of the defendants. But, taking into consideration the damages occasioned by such detention, the amount would not be equal to the sum necessary to give this court jurisdiction of the subject-matter.

The court being without jurisdiction to hear and determine the matters sought to be litigated by the plaintiff in his action at law, I am of opinion that any proceeding, summary or otherwise, instituted in pursuance of this section, would be invalid, inasmuch as the court was, in the first instance, without jurisdiction.

For the reasons herein stated, the defendants will be discharged from custody, and the plaintiff taxed with the costs in this proceeding.