WILLIAM R. BASKIN, RESPONDENT, v. STEPHEN BASKIN
AND OTHERS, APPELLANTS.

*Will—Subscription and Publication both essential to Execution.—2 R. S. Edm.* 63.

The subscription and publication of a will are independent facts, each of which is essential to its complete execution. The acknowledgment in the presence of the witnesses is for the purpose of identifying the instrument as the one signed by the testator. The publication is to avoid imposition upon the testator by procuring him to execute a will etc., under pretence that it is some other instrument. If the will has been duly signed, an acknowledgment and publication in the presence of the witnesses clearly and distinctly answering the purposes of the law, is sufficient.

APPEAL from a judgment of the Supreme Court, reversing the decree of the surrogate of Yates county, rejecting the will of William Baskin, deceased.

The will was executed on the 1st of December, 1865, and the testator died about five weeks afterward, being then eighty-nine years of age. He had made a previous will, about thirteen years before, which he had deposited in the hands of Nathan Raplee, who was named in it as one of the executors. Two or three years before his death, he sent for Mr. Raplee, who brought this will with him; and on its being read to the testator, he said it was all right. The former will remained in Raplee's possession until the testator's decease.

The draftsman of the last will was Henry Smith. He called on the testator, in pursuance of a message sent by one of his sons, two or three days before the date of the instrument; and Mr. Baskin told him he wished him to draw his will. He called again for that purpose on the morning of the first of December. The testator was confined to his bed; and his son John, who happened to call that morning, told him that Mr. Smith was there, and that he said he had come to write his will. He asked his father if he had not already made one. The old gentleman replied that he had; but that Raplee did not come down, and he was going to make another. John attempted to dissuade him from doing so,

expressing doubts as to his competency, and his fear that it would make trouble. Finding that the old gentleman adhered to his purpose, he left the room; and Mr. Smith then had an interview of an hour or more with the testator, in the course of which he drew the will, no one else being present. Mr. Baskin spoke of having made a former will, and said he desired to make a little alteration. Smith suggested making a codicil, but the testator objected, saying that one of the witnesses was gone. Each clause of the will, as it was written, was read and approved. Upon its completion, the whole was read consecutively, in a loud tone of voice; and, though he was somewhat deaf, Smith had no trouble in making him hear. He then sat up on the side of the bed, and wrote his name at the foot of the will, without assistance, and without spectacles. Mr. Smith, in compliance with his request, affixed his signature as an attesting witness; and Mr. Wilsey, the other witness, was then called in from the adjoining room. The will was in sight, on the stand at the bedside, where it had just been signed. The testator said to Wilsey that he wanted him to sign this will. He then took the instrument, which was handed to him by Smith; and as he held it in his hand, Smith asked him if he acknowledged that to be his last will and testament, and he replied that he did acknowledge it to be his last will and testament. Wilsey then affixed his signature. The testator said: " That kills the other will." After the execution of the instrument, and on the same day, he told his son John that he and William were executors of this will, and added: " I shall not tell you anything more what is in it, to-day, and you need not ask me."

There was no conflict of evidence as to the facts attending the execution of the instrument. Both the witnesses agree that the signature was affixed before Wilsey came into the room, and that the testator did expressly state in his presence that he had signed the will.

The surrogate was of opinion that, in the absence of such a specific statement, there was not, upon this state of facts, an acknowledgment of the subscription in the presence of Wilsey,

within the intent of. the statute in relation to wills ; and accordingly he rejected the instrument. The General Term held otherwise ; and from the judgment of reversal the present appeal was taken. ·

*David B. Prosser* for Appellants.

`Samuel H. Wells* for Respondent. . ·

PORTER,. J.—The mere statement of the facts is decisive of the issue. The will was prepared in the presence of. the testator, and under his immediate direction. It received his approval, clause by clause. The whole instrument was then read to him, · and he subscribed it in the presence of the draftsman, who, at his request, signed it as an attesting witness. The other witness, Mr. Wilsey, was called in from an adjoining apartment, and the testator told him he wished him to sign the will. The instrument was then on the stand at his bedside, where he had just before subscribed it. Mr. Wilsey saw that his signature was already attached ; and the testator, taking the paper thus executed in his hand, in presence. of both the witnesses, declared it to be his last will and testament. In compliance with his request, Wilsey then subscribed the attestation clause, which stated that the will was signed and published in presence of the attesting witnesses. It is clear that the testator intended a complete execution of the instrument; that with this view he signed it ; that he supposed he was acknowledging that he had done so, when he requested Wilsey to attest the truth of the facts stated in the certificate ; and that Wilsey so supposed, when he certified that he was a witness to the signature, as well as the publication. The remark of the testator, that " This kills the other will," would have been wholly unnecessary if he did not intend to acknowledge· the signature he had affixed to the later will, which. he held in his hand. ·  .

The subscription and publication of a testamentary instrument are independent facts, each of which is essential to its complete execution (2 Revised Statutes, 1st ed. and Ed. ed. p. 63, § 40). The requirement that the first shall be made· or acknowledged in the presence of each of the witnesses who attest. it, is to identify and

authenticate the instrument as one subscribed by the party. The requirement of publication in presence of each, is to prevent imposition upon the testator, by procuring him to execute and acknowledge a will, or codicil, under pretence that it is a paper of a different nature. The two prerequisites are distinct in their nature as well as their purpose, and an omission to comply with either is fatal to the validity of the instrument. There must be satisfactory proof of the subscription and publication of the will, in the presence of two witnesses. In respect to the subscription, it is sufficient that it be either made or acknowledged in the presence of those who attest it.

If it be unsigned, it is no will; and, in that case, publication and attestation are alike unavailing. If signed by another than the testator, and the signature be purposely concealed from his view, and that of the attesting witnesses, the mere publication of the instrument as his last will and testament cannot fairly be deemed an acknowledgment that the unseen subscription was made by his direction (Chaffee *v.* Baptist Missionary Convention, 10 Paige, 85, 91–2; Lewis *v.* Lewis, 1 Kernan 220; Rutherford *v.* Rutherford, 1 Denio, 33).

When, however, the testator produces a paper to which he has affixed his signature, requests the witnesses to attest it, and declares it to be his last will and testament, he does all that the law requires. It is enough that he verifies the subscription as authentic, without reference to the form in which the acknowledgment is made; and there could be no more unequivocal acknowledgment of a signature, thus affixed, than presenting it to the witnesses for attestation, and publishing the paper so subscribed as his will (Peck *v.* Cary, 27 New York, 9, 29, 30; Tarrant *v.* Ware, 25 ib. 425, *note ;* Coffin *v.* Coffin, 23 ib. 9, 15, 16; Nickerson *v.* Buck, 12 Cushing, 332, 342; Dewey *v.* Dewey, 1 Metcalf, 353; Gaze *v.* Gaze, 3 Curteis 451; Blake *v.* Knight, ib. 547; White *v.* Trustees of British Museum, 6 Bingham, 310).

The judgment of the Supreme Court should be affirmed.

2

Parker, J. (dissenting).—This is an appeal from a judgment of the Supreme Court, reversing a decision of the surrogate of Yates county, who refused to admit to probate a paper-writing propounded as the last will and testament of William Baskin, deceased. The instrument bore date December 1, 1865. It has no attestation clause, except the words, " signed and published in presence of." It has two subscribing witnesses, Henry Smith and William H. Wilsey, both of whom were examined before the surrogate.

The witness Smith testified as follows : " I saw the deceased subscribe his name to the instrument; at that time he declared it to be his last will and testament. I signed it as a subscribing witness in his presence, and at his request." On his cross-examination he said : " This instrument was written by me at the request of the deceased ; . . . . after he had signed the will, and after I had signed my name to it, Mr. Wilsey was called in; I then took up the paper and handed it to him, and said : 'Do you publish this to be your last will and testament ?' Said he did acknowledge that to be his last will and testament." Wilsey testified as follows : " I am a subscribing witness to this instrument ; I was called on to sign this will after it was written ; I was called in the room; the deceased told me he wanted I should sign this will, and the will was presented to William Baskin, deceased, and he took it in his hand, and he was asked if this was his last will and testament, and he said, ' This is my last will and testament;' I then signed it ; . . . . I think this instrument laid on the stand, in sight, when I was asked to sign it, and this is the same paper."

The surrogate held that the proof failed to show a due execution of the will, in that the testator did not subscribe the will in the presence of both of the attesting witnesses, but one of them having been present at such subscription, and did not acknowledge to the witness Wilsey that the subscription had been made by him, as required by the statute.

The provision of the statute is as follows :

" Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner.

" 1. It shall be subscribed by the testator at the end of the will.

" 2. Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made, to each of the attesting witnesses.

" 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." (2 Rev. Stat., 1st ed., and Ed. ed., p. 63, § 40.)

No one of these requisites can be dispensed with, and, without a substantial compliance with them all, the will cannot be admitted to probate. The onus of satisfying the Court that they have all been complied with lies upon the party seeking to establish the will (Chaffee *v.* Baptist Miss. Conv., 10 Paige, 91 ; Remsen *v.* Brinckerhoff, 26 Wend. 331 ; Lewis *v.* Lewis, 1 Kern. 224).

Was this will duly executed by a compliance with all the requirements of the statute ? is the question ; and particularly, did the testator acknowledge to the witness, Wilsey, that he had subscribed the will ?—for that is the only point made in the case by either side.

That an actual, formal acknowledgment was made, is not claimed by the Respondent ; but it is insisted in his behalf that there was a substantial compliance with this requirement of the statute, when the testator, with the instrument in his hand, declared it to be his last will and testament, and requested Wilsey to sign it as a witness.

According to the decision of the Chancellor in Chaffee *v.* Baptist Miss. Conv., supra, this was not sufficient. In that case, the subscribing witnesses testified that, when they went to the decedent's room, she took the instrument, which then had her name to it, out of her drawer, and putting her finger on her name, said : " I acknowledge this to be my last will and testament," or words

to that effect. But she did not admit in the presence of the witnesses that she had subscribed her name to the will, or that it had been subscribed thereto by any other person by her direction; and the Chancellor says: " The putting her finger upon the part of the will where the seal was, and acknowledging that the instrument was her last will and testament, was merely a compliance with the directions of the third subdivision of the fortieth section, which required her to declare the instrument which she asked the witnesses to attest to be her last will and testament. But it did not supersede the necessity of an actual subscription in the presence of the witnesses, or an acknowledgment to each of them that she had previously subscribed it, or had directed some other person to sign it with her name which appeared thereon." And he held the will invalid, because " it was not subscribed by her in the presence of the witnesses, . . . . and because there is no proof that she acknowledged, in their presence, that her name, subscribed to it, was put there by her, or by her direction, or in her presence."

In the case at bar, the declaration by the testator to Wilsey, that the instrument was his last will and testament, was a distinct declaration required by the third subdivision of the section ; and the request to Wilsey to sign as a witness was in pursuance of the fourth subdivision, and neither was any more than a compliance with those subdivisions respectively ; and they did not, either separately or together, supersede the necessity of a compliance with the requirement of the second subdivision.

If the form of declaration or request had contained the acknowledgment required by the second subdivision, as if the testator had said, " This is my last will and testament, which I have signed, and which I wish you to sign as a witness," doubtless it would have been sufficient, for there would have been the acknowledgment of subscription, the publication, and the request required by the last three subdivisions of the section. But to allow a *mere* compliance with the third and fourth subdivisions to answer as a compliance with the second, by implication, would, in effect, wholly ignore and nullify the second. The statute specifically re-

quires that the subscription of the testator shall be made by him, in the presence of each of the attesting witnesses, *or* shall be acknowledged by him, to each of them, to have been made by him.   The acknowledgment satisfies the whole of this requirement, it being in the alternative.

According to the theory of the Respondent, the publication and request imply the acknowledgment, the reasoning being, that the production and publication of a will by the testator—it having his name upon it—and a request to the witness to attest it, is a virtual acknowledgment of the subscription.   However correct the reasoning may be which leads to this conclusion, it is not safe to take the further step, which the theory calls for, and hold that it is also a *sufficient* acknowledgment under the statute.   Since the statute specifically requires not only the publication and the request, but also the acknowledgment, it is impossible to hold that the publication and request, although they imply an acknowledgment, are a full compliance with the statute.   The acknowledgment, beyond what may be so implied, must also be had.

The construction of this statute by our own courts does not, I think, warrant the theory of the Respondent.   The case of Jauncey *v.* Thorne (2 Barb. Ch. R. 40) is relied upon to sustain the view taken by the Respondent.   But that case arose under the statute of 1813, and, like most of the cases which have arisen under the present statute, involved rather questions of evidence respecting the character and amount of testimony requisite to establish the necessary facts.   And from the testimony in that case, the Chancellor came to the conclusion that the requisite formalities were actually complied with.   In his discussion of the case he refers to several English cases which seem to favor the Respondent's view, and on which he relies; but the case itself is not an authority for allowing the mere publication and request to operate, by implication, as a sufficient acknowledgment of the subscription, under the requirement of the present statute.   All that the Chancellor says concerning that idea, is with reference to the Act of 1813, which was in force when the will in that case was made.   The ground of his decision is shown at the close of his opinion, where he says :

" Although this witness does not recollect the fact, I *have no doubt*, from his testimony, and that of the other two witnesses, in connection with the circumstances to which I have referred, that the same formality of acknowledgment was gone through with, when Apps was asked to witness the will, as when Jones and Robinson witnessed it ; and that, at the time they attested the instrument, *all the subscribing witnesses understood* it was the testator's will which they were attesting by their signatures, and that the testator intended to admit that he had signed, sealed, and published it as such."

The case of Peck *v.* Cary (27 N. Y. R. 9) was also a case depending upon questions of evidence, whether sufficient to establish the due execution of the will or not, and in respect to the subscription or acknowledgment thereof, which was a question in the case. Judge Denio, who gave the prevailing opinion, after reviewing the evidence, gives his conclusion as follows : " I cannot bring myself to entertain a serious doubt that the paper was *actually* signed in the presence of all three witnesses."

None of the cases in this State, which have arisen under this statute, give any countenance to the doctrine that the acknowledgment required by the 40th section above referred to can be made out by proof of the publication and request therein required ; but they all assent, or recognize the necessity of proof of each of the requisites contained in the four subdivisions of that section. In Lewis *v.* Lewis (1 Kern. 225) the decision in Chaffee *v.* Baptist Miss. Conv., supra, is referred to as follows : " The testatrix, who had subscribed the will by making her mark, but not in the presence of the attesting witnesses, afterward, and in their presence placed her finger on her name and said, ' I acknowledge this to be my last will and testament.' It was held that the will was not duly executed, and I think the decision right. The statute contemplates the subscription, or the acknowledgment thereof, in the presence of the witnesses, and a publication of the instrument as a will, as two distinct acts, and both are necessary to its due execution ; and being explicit and clear in terms, courts are not

authorized to vary it by construction, *or to make the one act stand for both.*"

Upon this branch of the statute, it is the subscription, and not the will, which is to be acknowledged.

In Remsen *v.* Brinckerhoff (26 Wend. 331), Chief-Justice Wilson says: "Nothing can be more explicit than the law of 1830. Four distinct ingredients, as declared, must enter into, and together constitute one entire, complex substance essential to the complete execution." And after specifying those four ingredients from section 40, he continues: "Now it is obvious that every one of these four requisites, in contemplation of the statute, is to be regarded as essential as another; that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal."

The decisions in our courts, although they hold parties to a strict compliance with each requirement of the statute, have been much less strict in their construction of the evidence offered to prove such compliance, and have in some cases admitted wills to probate where, from the whole case, they could spell out such compliance, although the attesting witnesses were unable to recall to their recollection the existence of the necessary facts. Such was the case in Peck *v.* Cary, Jauncey *v.* Thorne, Lewis v. Lewis, supra, and in Orser *v.* Orser, 24 N. Y. R. 51; and Tarrant *v.* Ware (25 N. Y. R. 425, *note*). "The most liberal presumptions in favor of the due execution of wills are sanctioned by the courts, where from lapse of time, or otherwise, it might be impossible to give any positive evidence on the subject." (Jauncey *v.* Thorne.) "But if, on examining all the witnesses, and considering the attending circumstances, a reasonable doubt remains whether one or more of the directions of the statute have not been omitted, the probate must be refused, although it may appear probable that the paper expresses the testator's intentions." (Tarrant *v.* Ware, 25 N. Y. R. 429, *note.*)

In the cases above referred to, in which the want of recollection of the attesting witnesses as to the occurrence of the necessary facts has been in the way of the probate, much stress has been

laid upon the existence of the usual attestation clause as overcoming such want of recollection.

In the present case I do not see any opportunity for holding that the acknowledgment was made, unless it is inferred from the publication and request to the witness to sign as a witness. The attestation clause, asserting the acknowledgment, does not exist; and there is no circumstance, except the one first referred to, tending to prove it. There is the evidence of both the attesting witnesses that the acknowledgment of subscription was not made, and against this even a full attestation clause would not have prevailed.

I cannot but think the decision of the surrogate right, and that the judgment of the Supreme Court should be reversed, and that of the surrogate affirmed.

All the judges concurred in the opinion of Porter, J., except Judge Parker, who delivered a dissenting opinion, in which GROVER, J., concurred.

Judgment of the Supreme Court affirmed.

<div style="text-align: right">

JOEL TIFFANY,<br>
State Reporter.