Andrews, J.
That the testator, when he subscribed the will, understood the character of the instrument is conclusively established by the evidence.
There was an interval of ten years between the execution of the will and the last codicil. The will and codicils were drawn by John F. Colin, under the direction of the testator, and he attended at the house of the draughtsman and there executed them in presence of the subscribing witnesses.
The testator took possession of the will and codicils immediately after their execution, and retained them until his death.
It is equally clear that the subscribing witnesses had information of the testamentary character of the instrument attested by them at the time of their attestation.
But it is not sufficient to establish a valid publication of a will, that it appears that the nature of the instrument was known to the testator and subscribing witnesses at the time it was executed.
The mode of publication is prescribed by statute, and it *128 requires that the testator, at the time of subscribing or acknowledging his subscription, shall, in the presen'ce of the witnesses, “declare the instrument so subscribed to be his last will and testament.” (2 Rev. St., 63, § 40.)
The object of this provision is to secure the testator against fraud and imposition, and the knowledge that the instrument which the witnesses are called upon to attest is a will, must be communicated to them by the testator at the time of his subscription or acknowledgment^ and knowledge derived from any other source or at any other time, of the same' fact, cannot stand as a substitute for the declaration of the testator. But" the fact that the testator was fully apprised of the testamentary character of the instrument-may be considered in aid of proof tending to establish a publication.
The will and codicils are attested by two witnesses, and the' facts necessary to a due execution are recited in the 'attestation clause.
It appeared, before the surrogate, upon the examination of John F. Colin (who was a subscribing witness to the will and two of the codicils) that he was present at the execution of the will and' codicils.
They were subscribed by the testator in presence of the witnesses, and- Colin testified, “ I stated it was necessary he (the testator) should request us to sign his will as witnesses, and therefore I said that that was Mr. Knox’s will, and he wished us to sign it as witnesses. I used the same form to all those I signed as well as to the other. I used the same ceremony. This occurred after he had signed the paper, but before the witnesses signed in each instance. This was said by me in presence of the witnesses and himself.”
The witness also testified that the testator “ said nothing; made no reply;” “ that he asked him no question,” and added: “ I have no dbubt he heard what I said; Mr. Knox took the paper in' every case.”
Proof was made before the surrogate,- by affidavit of the subscribing witnesses, to the will and codicils, of the facts necessary to their due execution, but probate was refused *129 upon the ground that it was disclosed by the testimony of John F. Colin that there was no valid publication. In this the surrogate erred; and, without considering whether the testimony of this witness, if it tended to establish a want of publication, should prevail against the other proof and circumstances in the case, we are of opinion that upon his evidence there was a valid publication of the will.
Before a will can be admitted to probate it must appear affirmatively that the statute has been complied with. But a substantial compliance is sufficient, and, although the statute declares that the witnesses must sign at the request of the testator, and that he shall subscribe the will, or acknowledge the subscription in their presence, the words of request or acknowledgment may proceed from another, and will be regarded as those of the testator where the circumstances show that he adopted them, and that the party using them in his presence was acting for him, with his assent.
In Peck v. Cary (27 N. Y., 9), the draughtsman of the will, in presence of the testator, requested the witnesses to witness the will, and they thereupon signed it, and it was held to have been done at the request of the testator.
Denio, C. J., said: “ The object of the statute is, that an officious signing by witnesses, without any privity of the testator, should not be recognized as sufficient. Here the agency of Morgan (the draughtsman) being established and known, the understanding of the witnesses that they came forward and signed becaue the testator desired them to do so, and the understanding of the testator that they came and signed at his instance, was perfect, and the privity which was the purpose of the statute was secured.”
And in Baskin v. Baskin (36 N. Y., 416), where the testator produced aj>aper signed by him, and, holding it in his hand, declared it, in presence of the witnesses, to be his last will and testament, and requested them to sign it, it was held that the testator thereby acknowledged his subscription, within the statute. (See also Coffin v. Coffin, 23 N. Y., 9; Tarrant v. Ware, 25 id., 425.)
*130 This case, although new in instance, is within the principle of the cases cited. The fact that the instrument in question was the will of the testator was made known to all the parties by the public declaration of Colin, who had charge of its execution. He assumed to act and to speak for the testator, and this agency was consistent with his relation to the testator and the will. The testator made no dissent, and when the witnesses had signed the will he took it into his possession and thereafter retained it.
The circumstances show that the testator intended to make a valid execution of the will, and the witnesses signed it at his request, within the case of Peak v. Cary. If he is held to have adopted the declaration of Colin in respect to the attestation by the witnesses, the presumption is eqtially strong that he adopted that part of it in which Colin declared that it was the will of the testator.
In Remsen v. Brinckerhoff, 26 Wend., 332, Judge Nelson, in speaking of the declaration required by the statute, said: “Any communication of this idea, or to this effect, will meet the object of the statute.” And the Chancellor, in the same case (8 Paige, 499), and in speaking upon the same subject, says: “ I think, .therefore, there can be no reasonable doubt that, if this will and this attestation clause, or this attestation clause alone, had been read over in the presence and hearing of the testatrix, so that the witnesses could be fully satisfied that she knew and understood its meaning, her request to them to attest it as witnesses would have been such a recognition of the instrument as her will as to make it a good execution thereof, according to the intent and spirit of the statute.” (See also Trustees of Auburn Theological Seminary v. Calhoun, 25 N. Y., 425.)
In holding that there was a due publication pf this will, we do not trench upon the policy of the statute.
It is a just conclusion from the evidence, and sustains the intention of the testator. It must be shown that the statute mode of execution was observed before a will .can be admit- *131 ■ ted to probate, but a construction should be avoided which will make the statute a snare instead of a protection.
The judgment of the Supreme Court and the decree of the surrogate must both be reversed, with costs of the whole litigation to both parties, to be paid out of the proceeds from the sales of the real estate, and the proceedings remitted to the surrogate with a direction to admit the will to probate. All concur except Allen, J., absent.
Judgment accordingly.