THE SISTERS OF CHARITY OF ST. VINCENT DE PAUL, APPELLANTS, *v.* MARY KELLY, ANN MALLORY AND MARGARET DOOLIN, RESPONDENTS.

*Will — signature of testator — place of.*

The signature of the testator written in a will in the middle of the last clause appointing his executor, but after the clause disposing of his property, is a sufficient subscription to satisfy the requirements of the statute.

APPEAL from a decree of the surrogate, rejecting an instrument offered for probate as the last will and testament of John Kelly,

deceased, and adjudging that the same was not executed and attested in the manner prescribed by law.

The instrument·offered for probate was partly written and partly printed, apparently a short form of will such as is sold by stationers.

After the disposing clauses is the following clause: "Likewise I make, constitute and appoint Edward McCarthy to be executor, *J. Kelly*, of this, my last will and testament, hereby revoking all former wills by me made. In witness whereof I have hereunto subscribed my name and affixed my seal the 24th day of July, 1874, in the year of our Lord one thousand eight hundred and sixty.

"Witnesses.

"Edward McCarthy.

"Daniel Van Clief.

"Subscribed by *John Kelly*, the testator named," etc.

When the deceased requested the witnesses to sign the instrument the name "J. Kelly" had already been written by him, where it first appears. The witnesses then signed it and afterwards the deceased, in their presence, wrote his name where it appears in the attestation clause.

*James A. Deering*, for the appellants. The execution of the will by the testator complied with the statute. (2 Rev. Stat., 63, part 2, chap. 6, art. 3, § 40; *Mc Guire* v. *Kerr*, 2 Bradf. Sur., 257; Redfield on Wills, 703; *Conboy* v. *Jennings*, 1 S. C., 622; *Cohen's Estate*, 1 Tucker, 286; *Matter of Gilman*, 38 Barb., 364; *Tounele* v. *Hall*, 4 N. Y., 140; *Thompson* v. *Quinby*, 2 Bradf., 449; *In re Duane*, 8 Jur. [N. S.], 752; *In re Kempton*, 3 Sw. & Tr., 427; 2 Parsons on Contracts, 515; 4 East, 130; 3 Sandf., 318; 17 N. Y., 194; 14 M. & W., 794.) The second signature of "*John Kelly*" in the attestation clause was wholly unnecessary, and a matter of supererogation. (1 Redfield on Wills, 208, 209; *Winson* v. *Pratt*, 5 J. B. Moore, 484; S. C., 2 Br. & B., 650; *Rosser* v. *Franklin*, 6 Grattan, 1; *Rucker* v. *Lambdon*, 12 Sw. & M., 230; *Secherest* v. *Edwards*, 4 Met. [Ky.], 163.) The subscription of the testator, "*J. Kelly*" when first made by him, was in conformity with the statute. (*Harrison* v. *Harrison*, 36 N. Y., 486; *Baskin* v.· *Baskin*, id., 416; *Butler* v. *Benson*, 1 Barb., 526; 1 Jarman [ed. 1861], 74; *Ellis* v. *Smith*, 1 Ves.

Jr., 11; 1 Redfield on Wills, 209, 211; *Armstrong* v. *Armstrong*, 29 Ala., 538; *Rosser* v. *Franklin,* 6 Grattan, 1; *Dudley* v. *Dudley*, 3 Leigh, 436; *Bone* v. *Spear*, 1 Phillim., 345; *Tone* v. *Castle*, 1 Curt., 303; *Dewey* v. *Dewey*, 1 Met., 349; *Nicherson* v. *Brick*, 12 Cush., 332; *Tilden* v. *Tilden*, 13 Gray, 110; *Todd* v. *Thompson*, 9 L. T. [N. S.], 177; *Hall* v. *Hall*, 17 Pick., 373.) The declaration of the testator, Kelly, at the time of acknowledging the signatures, that the paper was his last will and testament was sufficient within the statute. (*Hunn* v. *Case*, 5 N. Y. Sur., 307; *Van Hoosier* v. *Van Hoosier*, id., 365; *Hunt* v. *Moobrie*, 3 Bradf. Sur., 322; *Tunnision* v. *Tunnision*, 4 id., 138; *White* v. *Trustees*, 6 Bing., 310; *Rieben* v. *Hicks*, 3 Bradf. Sur., 353; *Nipper* v. *Groesbeck*, 22 Barb., 670.) The absence of a seal is not fatal. (*Matter of Diez*, 50 N. Y., 88.)

*Otto Horwitz*, for the respondents. The signature of the testator should be at the *end* of the will. (*Watts & Levy* v. *Public Administrator, etc.*, 4 Wend., 168; *Lewis* v. *Lewis*, 73 Barb., 17; 2 Bradf., 244.) The witnesses who are to attest the subscription and publication thereof, by the testator, should sign the same after the subscription by him. (*Jackson* v. *Jackson et al.*, 39 N.Y., 153.)

BRADY, J.:

The testator said to the witnesses, taking a paper from his pocket, I have drawn a will, or, I have made my will, and I want you to witness it. The will was partly in print and partly in ink. The name "J. Kelly" was written in the blank between the letters "execut" and the word "of," thus, "execut J. Kelly of," and in the clause appointing the executor of his will thus made. This name appears, therefore, subsequent to the testamentary disposition of his property, but not at the end of the clause appointing the executor, and yet prior to the attestation clause.

There is no evidence that the testator signed the name "J. Kelly" mentioned, except what was said by him when he produced the will, and what was done by him on the subject by a subsequent act of his, to which reference will be made, and the apparent fact that the written part of the will, including the signatures or name "J. Kelly" and "John Kelly," was written by him.

He produced, as already stated, the will, saying, "I have drawn a will, or, I have made my will," and it was signed as stated, and in the place shown. The witnesses, one of whom read the will, then signed it, and then the testator wrote his name in the printed clause containing the testamentary declaration that it was his last will and testament, and in a blank between the words " subscribed by " and the word " the," thus: "subscribed by John Kelly, the," etc.

It appears, from these circumstances, that the testator produced a will bearing his name or signature, preceded by a declaration that he had drawn or made his will, and followed by a further declaration, after the witnesses had signed it, that he had subscribed it, such declaration consisting of the act referred to, of his last signature in the second blank pointed out.

This insertion of his name by him after the witness had signed, was thus made *after*, and not before he had pronounced the will to be his, and after he had requested the persons present to witness it ; and it was not made at the end of attestation clause, but in it, and on a blank in which it was important that his name should appear, though perhaps not necessary. The question presented is, whether the will was signed at the end within the meaning of the statute ? If the name " J. Kelly " can be regarded as at the end, then the requisition of the statute is complied with.

The object to be accomplished by the statute was to prevent any interpolation or change of, or addition to, the testamentary part of it. Such a formality was not required at common law. (*Tonnele v. Hall*, 4 Coms., 145, per JEWETT; 1 Jar. on Wills [Perkins' ed.], 114, and notes.) It was sufficient if the name appeared in the body of the will written or adopted by the testator, and hence the statute.

The attestation clauses in the precise form provided by statute are not essential prerequisites (*Conboy v. Jennings*, 1 N. Y. S. C., 622); nor is the clause declaring the selection of the executor.

The law supplies the omission of the testator to name his executor by appointing one with the will annexed.

If the name of J. Kelly then be regarded as out of place, and therefore nugatory because of the clause in which it is written, then that clause may be rejected and the rest of the will sustained.

This would not interfere with the intention of the testator as to his estate in its appropriation, but would cut off the executor named, unless he were appointed with the will annexed.

If a testator produce a paper which purports to be signed by him, and declares it to be his last will and testament, it is such to all intents and purposes, and needs no further ceremony in that regard to become operative as a testamentary instrument. The signature is his, whether made by himself or another with his authority, and thus ratified. (*Baskin* v. *Baskin*, 36 N. Y., 416; *Willis* v. *Mott*, 36 id., 486.) The second writing of the testator's name was, in fact, a mere filling in of a blank, and that it was not designed as a subscription of the will is quite evident.

It was the unnecessary, but natural act, of one unlettered in the law, and not familiar, therefore, with its solemnities. It must be so considered if proper significance be given to that which precedes it, and which contains the really important part of the instrument. The case of *Jackson* v. *Jackson* (39 N. Y., 153), is not in conflict with these views.

The testator did not sign the will under discussion in that case until after the witnesses had signed it. It was upon that ground alone that it was rejected. In this case the will, as a will, if signed at all by the testator, was executed before the witnesses signed it. It was complete when it was produced by the testator as his will, drawn by him, or made, as he himself expressed it. The signature of J. Kelly was intended to be that of the testator to his will, and his intention should not be frustrated by the accidental selection of a locality to sign it, which, though within the spirit, is not expressly within the letter of the statute. In the case of *In the goods of Woodley* (3 Sw. & Tr., 429), it appeared that the signature was written in a manner closely resembling that of the testator in this case.

The last three lines of the will were as follows:

" to and I hereby appoint
my sister Elizabeth Blackburn
        of this
Executrix
                my will."

The signature of the testator was written in a direction slanting downward, commencing just under the beginning of the word "appoint" in the last line but two, and extending downwards over the latter part of "Elizabeth" in the last line but one, the tail of the "y" at the end of his signature touching the last line. The question was, whether it was signed at "the foot or end" of the will, as required by the acts of Parliament relating to the subject. Sir J. P. WILDE said: "Looking at this paper, I think that the signature cannot be said to be otherwise than at the foot or end of the will, and that the last words should be included in the probate as forming a part of the will." See, also, on the question of intent: *In the goods of J. Walker* (1 Sw. & Tr., 653); *In goods of Cassmore* (1 L. R., 653). The rule declared in the first of these cases should prevail here. It will carry out the intention of the testator.

The decree of the surrogate should, therefore, be reversed; the will admitted to probate, and letters testamentary issued to the executor named.

DAVIS, P. J., and DANIELS, J., concurred.

Decree reversed; will directed to be admitted to probate, and letters testamentary issued to the executor named.