Johnson, Chief Judge.
We will consider the several questions made in the order they arose in the case.
As to the execution of the will. It was a conceded fact that the testator did not subscribe his own name to the paper, but that it was signed for him by one Jeremiah Hall, who wrote the will at testator’s instance.
Evidence was given by the attesting witnesses, tending to show that such signing was done before they came into the room, and that while they were present he neither signed the paper nor acknowledged the signature to be his, *610 nor did he acknowledge in their presence that such signing by Hall for him was by his express direction or in his presence.
On the other hand, the evidence tended to show that it was signed for the testator by Hall, in his presence and by his express direction, and in the presence of the witnesses, who, at his request, attested the same in his presence.
Upon these aspects of the evidence, the plaintiff in error presented two propositions to be given in charge, which were refused:
1. That if the will was signed for the testator, in the absence of the attesting witnesses, by Hall, then the fact that it was so subscribed in the testator’s presence and by his' express direction, must be proved by the two attesting witnesses who heard the testator acknowledge such fact, or by two witnesses.
2. If it was so signed, it is not well executed unless the testator acknowledged to each and both of the attesting witnesses that Hall had so signed for him in his presence and by his express direction. In lieu thereof, the court charged as follows:
“ It is not necessary that any precise form of words should be used by the testator in acknowledging either his signature or will. It will be sufficient if, by signs, motions, conduct, or the attending circumstances, he gives the attesting witnesses to understand that he acknowledged the will and the signature to be his. If, therefore, you should find, from the evidence, that Mr. Haynes authorized Mr. Hall to sign his (Haynes’) name to the will when no other witness was present, and Hall did so sign the will in the presence of Mr. Haynes, and afterward, on the same day, Mr. Haynes, either by words, signs, motions, conduct, or the attending circumstances, gave the attesting witnesses to understand that he acknowledged the signature, and requested them to attest the will, and that they did so attest the will in his presence, this will be a sufficient acknowledgment and attesta *611 tion of the signature, find your verdict should be for the defendants and the will.”
These requests, and the charge given, raise the question as to what constitutes the due subscription and acknowledgment of a will, when the attesting witnesses are not present and did not see the testator sign.
The second section of the wills act reads: “ Every last will and testament (except such as is mentioned in the seventy-fourth section of this act) shall be in writing and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two competent witnesses, w'ho saw the testator subscribe, or heard him acknowledge the same.” [Note. — In Swan & Critchfield’s Statutes, the last words are, “ or heard him acknowledge to same,” but in the original roll and in Curwen, it reads “ the same.”]
Counsel claim that where the witnesses did not see the testator sign, then they must have heard him acknowledge all the facts requisite to such signing, and if the will was signed for him, that the acknowledgment must embrace the fact that he expressly authorized another person to sign for him; and that a general acknowledgment that such signature was his, and that he acknowledged the; paper so signed as his will, is not sufficient.
This view was rejected by the court below, and the raleas laid down in Raudebaugh v. Shelley et al., 6 Ohio St. 307, adopted.
That was the case of a testator signing himself in the> absence of a witness, while this is a case of signing By another. It was there held that the testator need not in, words expressly acknowledge such subscription, if bysign's,, motions, conduct, or attending circumstances, he gave-the.* attesting witnesses to understand that the signature' and' will were his.
To the same effect is Baskin v. Baskin, 36 N. Y. 416, where the testator produced a paper bearing his own signature, and requested the witnesses to attest it as-Ms ■ will. *612 It was held a sufficient acknowledgment under the New York statute, which is like our own.
Nor is this in conflict with Chaffee v. Baptist Miss. Con., 10 Paige, 85, much relied on in this case. That was the case of a testatrix who could not write. The will, with her name signed to it, was produced by her to the witnesses, and putting her hand on the signature said: “I acknowledge this to be my last will and testament;” but she did not admit in the presence of the witnesses that she had subscribed her name to the will, or that it was her signature, or that it had been subscribed thereto by any other person by her direction, and there was no other evidence that she did so subscribe or acknowledge the signature to the will, and it was held insufficient, because merely calling the paper her will was not an acknowledgment of the signature to the will.
The distinction between these eases is, that in Raudebaugh v. Shelley and Baskin v. Baskin, the personal signature had been made, in the absence of the witnesses, an acknowledgment of the signature as his, to the witnesses, and of the paper as his will, is sufficient; while in the Chaffer case, if signed by another, in the absence of the witnesses, the mere publication of the will as his, without any acknowledgment of the signature, can not be deemed an acknowledgment of the unseen subscription made by his direction.
The subscription by the testator, either in person or by another, by his express direction, in his presence, and the publication of the same, are independent facts, each of which is essential to the due execution of the instrument, but it by no means follows, that a will must fail if the attesting witnesses did not remember all that passed at the time that it was acknowledged, or that other evidence can not be adduced to establish the will.
In Chaffer v. Baptist M. C., 10 Paige, it was held: “ that the facts may be implied or shown from circumstances, or the testimony of other witnesses, w-hen the attesting witnesses fail, to recollect what did occur, or even when they *613 testify that important requirements were not complied with. Duckwall v. Weaver, 5 Ohio, 13; Bennet v. Sharp, 33 E. L. & Eq. 618.
In Adams v. Field, 21 Vt. 256, where the will was written by another, beginning,: “I, A. B.” etc., if the testator acknowledged it to be his will, in the presence of the witnesses, and desire them to attest it as such, it will be sufficient under the common law rule that did not require the will to be signed at the end, if signed in the body of the-paper. Here the signature in the body of the will, written by another, was held to be the testator’s signature if so acknowledged by him to be his.
So in Sarah Mills’ Will, 4 Dana, 1, where ‘the will was drawn by a neighbor, with her name in the body of the instrument, as “ I, Sarah Miles,” etc., and read to and approved by her in the presence of witnesses as her will, and as such attested. She failing to sign for want of strength; it was held a sufficient signing and acknowledgment under the Kentucky statute, which, like the English statute of frauds, did not require a signing at the end of the will. We cite these cases to show that a signature by another may be sufficiently acknowledged to the attesting witnesses, without repeating to them, that the same was made by express direction. In the last case, Robertson, C. J., says : “ The fact that the testator wrote his own name can not be material, because the statute only requires that it should be signed by himself or by some other person with his authority; and it has been often decided that the mark of an illiterate testator, or his acknowledgment of his signature, written by another, may be a sufficient signing in the case of a will as in other analogous eases.”
Whether, in the absence of all evidence tending to show that such previous signing by another, for the testator, was by his express direction and in his presence, a mere acknowledgment of the will and signature, to the witnesses, would be sufficient; or whether, in case of such a signature without express authority, it could be adopted in the pres *614 ence of the witnesses, we need not now determine, as they are abstract questions not raised by the evidence.
The fourth request, as here mentioned, embodies the point actually involved; that is, if Hall signed for the testator, in his presence, by his express direction, bat in the absence of the attesting witnesses, it is not properly executed, unless the testator acknowledged to each and both of them, that Hall signed for him by his express direction and in his presence.
That is to say, that although such express authority to sign, and such signing be proved by other competent testimony, yet the will must fail, unless the acknowledgment was made to the witnesses, not only that the signature was his, but also acknowledge that he had, previous to such signing, expressly authorized Hall to sign for him, and that he had done-so in his presence.
In this we do not concur. The Raudebaugh case decides, that when the testator himself signs in the absence of the witnesses, he need not acknowledge by words or in any particular form, but may do so by signs, motions, or conduct. The same rule applies to a signing by another in the absence of the witnesses, otherwise one who had lost the power of speech, though in possession of all his other faculties, could not acknowledge a will previously signed for him by another by his express direction and in his presence., We agree with the court below, that such an acknowledgment is sufficient, if made by signs, motions, conduct, or attending circumstances, and is understood as affirming the signature and will to be his.
We also agree with counsel, that mere silence is not enough. The testator must, in some way, acknowledge and publish the paper as his will.
Upon a careful review of the case and the authorities, we conclude:
1. That, if a will is subscribed by the testator, or for him by another, in his presence and by his express direction but in the absence of the attesting witnesses, the will, and *615 the subscription to tbe same, must be acknowledged by the testator to the attesting witnesses.
2. That in making such acknowledgment it is not necessary that the testator should acknowledge to each or both of said witnesses, the fact that Hall had signed for him at his request and by his express direction, if, by words or otherwise, he gave the witnesses to understand that the' signature and the will were his, and then had it attested as such by the witnesses, in his presence.
8. That tbe signing of a will is one step in its execution, and when done in the absence of the attesting witnesses, either by the testator or for him by another, the fact of, such signing and the authority to sign may be shown by any competent witnesses, or by facts and circumstances which raise the presumption of such execution, as well as by the acknowledgment of the attesting witnesses.
4. That, while the due execution of a will can not be assumed in the face of positive evidence to the contrary, merely because it has been signed and attested in due form, yet mere failure of the attesting witnesses, or their denial of the facts, will not defeat it if it can be established by other evidence.
Neither failure of memory, nor the corrupt or false swearing of attesting witnesses will be allowed to defeat the will, if its due execution can be shown by other testimony. 3 Redfield on Wills, ch. 1, § 3, p. 9; Clark v. Dunnavant, 10 Leigh, 13; 1 Redfield on Wills, ch. 4, § 19, p. 22; Dean v. Dean, 27 Vt. 746; Elliott v. Elliott, 10 Allen, 357; Lawyer v. Smith, 8 Mich. 411; Tilden v. Tilden, 13 Gray, 110; Ella v. Edwards, 16 Gray, 91; Dewey v. Dewey, 1 Metc. 849; Chaffee v. Bap. Miss. Con., 10 Paige, 85; Adams v. Field, 21 Vt. 256; Bowman v. Christman, 4 Wend. 277; 2 Phill. on Ev., 935, note; Kirk v. Carr, 54 Penn. St. 285.
This last was the case of a will, signed by another, and admitted to probate. It was held that the prima facie case of due execution could not be overcome by one of the attesting witnesses swearing that he did not recollect that the testatrix requested her name to be signed by another.
*616 During the trial to a jury in the district court, upon appeal, it was charged by the contestants, that the original will which had been transmitted by the probate court to «the common pleas, and which had been used in the former trial, had been altered since such trial, and evidence « as given tending to support that charge, and also on the other hand to show that it was made before the execution o'f the will.
The alleged alteration consisted of changing the word “east” to “west” in the devise of real estate, which materially changed the nature, location, and extent of the devises of real estate.
In the general charge, the court said: “Something has been said about an alteration of the will since its probate. ’With that you have nothing to do. You will give that matter no attention or consideration.”
A general exception to the whole charge was noted, but none to this proposition in particular.
As the bill of exceptions purports to contain all the evidence and charge of the court, and one of the grounds for a new trial was, that the verdict is against the evidence and not supported thereby, the court will look to the whole charge in connection with the evidence, with a view of determining whether, under all the facts and circumstances of the case, substantial justice has been done, or whether a new trial should have been granted. M. & C. R. R. Co. v. Strader, 29 Ohio St. 448.
■The effect of such charge will therefore be considered under the point.
8. That the verdict is against the evidence and unsupported thereby.
Under this head, we will not discuss the evidence at length. It is enough to say, that upon the question of a due execution of the paper, as a will, we are of opinion, the verdict was fully warranted, notwithstanding the infirmity of memory of the attesting witness, after the lapse of so many years.
The question still remains, is the verdict and judgment *617 warranted, in view of the evidence and charge of the court on the subject of when the will was altered, and the effect of such alteration. True it is, as stated by the court below, that an alteration of the will, after its probate, can not invalidate it, and yet we think that this remark, taken in connection with the issue before the jury, and the evidence as to when the word east was changed to west, was calculated to mislead the jury.
The jury must ascertain and find out whether “ the writing produced” was the valid will of the testator or not. This writing, is the original will transmitted by the probate judge to the court, as required by statute.
In determining whether this paper was the last will of Frederick Haynes, the jury were called on to determine not only the capacity of the testator to make a will, and its due execution, but also, the equally important fact of identifying the paper and its provisions as such will.
If they find that the paper writing produced was duly executed as a will by one competent to make one, and it is apparent upon its face, that material words in it have sometime been altered, then it is a material inquiry, if the paper is challenged on that ground, as to wheu the change was made. If before execution, then the paper as it reads is such will; if afterward, it is not such will as it reads by reason of the alteration, and the jury should, by special verdict, have passed upon this question. In the present ease it is apparent, from an inspection of the paper, that the word in dispute was originally written “ east,” and had been changed to “ west.” Defendants in error offered proof to show the change was made while writing, and before execution, and plaintiffs in error offered proof to show it was so altered since probate.
The jury were instructed to disregard this evidence. In this there was error. If the word had been changed before execution, then the writing produced was the last will, but if after, it was not, and the jury erred in establishing it in its altered condition. Such subsequent alteration would not necessarily invalidate the instrument, for that depends *618 on other considerations and facts not disclosed in this case, but it would prevent the establishment of the will in the changed form in which it is produced to the jury.
Unless this alteration was made under such circumstances, as invalidates the instrument, the jury must establish the will as it read when executed. If the paper was a valid will with the word east instead of west in it, then it should be so established.
The verdict of the jury establishes the will produced before them, reading west and not east. The judgment is, that the “ will mentioned in the petition,” with the "word east and not ivest, was adjudged to be the last will. This inconsistency between the verdict and judgment, as to the proper reading of the paper, renders it uncertain what are the provisions of the will established in this regard.
The real question was, in view of this controversy, how did the will read in this respect, when it was executed, and not how it was recorded nor how it now reads.
In a collateral proceeding the record of probate might probably be regarded as final and conclusive; but in a contest under the statute, such is not the case, for it is the will itself, and not the probate record, nor a copy thereof, that is to.be produced; and this probated will, with the papers attached, makes a prima facie ease for the paper as it reads, and until it is shown that it has been altered since execution.
The proceedings to contest a probated will are in the nature of an appeal from the order of probate. All questions are to be heard and determined de novo, as upon appeal, the probate proceeding making a prima facie case in favor of the writing produced.
Under what circumstances a material alteration, purposely made by one to be benefited thereby, would invalidate the instrument, in whole or in part, is a question we have not considered, as it is not in the case. The conclusion reached renders it unnecessary to determine the other questions made on the record.
We only add, without comment, a reference to some *619 authorities bearing on the point considered. In re Wilson, 8 Wise, 171; Jackson ex dem. Malin v. Malin, 15 Johns. 293; Pigot’s case, 11 Coke, 26; Master v. Miller, 1 Smith’s L. Cas., pt. 11, p. 1254, and notes; Wikoff’s Appeal, 15 Penn. St. 281; L'Fit v. L'Batt, 1 P. Wms. 526; 3 Redfield on Wills, ch. 1, § 5; 1 Williams on Ex’rs (6 Amer. ed.), 167-172.
Judgment reversed, and cause remanded to the district court for a new trial.