Farley v. Farley.

---

---

FRANCIS A. FARLEY, appellant,

*v.*

JOSEPH C. FARLEY et al., respondents.

1. The deposition of a subscribing witness, made before the surrogate in proving a will, constitutes part of the evidence which must be considered on an appeal, and such a deposition, when supported by a perfect attestation clause, raises a strong presumption of the due execution of the will.

2. An attestation clause is made for the purpose of preserving, in permanent form, a record of the facts attending the execution of the will, so that, in case of the failure of the memory of the subscribing witnesses, or other casualty,

Farley v. Farley.

they may still be proved; and the courts have accordingly held that, on proof of the authenticity of the signatures of the subscribing witnesses, the facts stated in the attestation clause must be accepted as true, until it is shown by affirmative proof that they are not.

On appeal from Hunterdon orphans court.

*Mr. Richard S. Kuhl,* for the appellant.

*Mr. W. Holt Apgar,* for the respondents.

THE VICE-ORDINARY.

The appellant asks that the decree of the orphans court of the county of Hunterdon, adjudging that a certain writing, purporting to be the will of Oliver W. Farley, deceased, is his true last will, be reversed. Two reasons are assigned for reversal: First, that the testator was induced by fraud to execute this writing as his will, when, in truth, in two respects, it was not his will. Stated more specifically the charge is, that the draughtsman of the writing, who was a son of the testator, inserted two clauses arbitrarily, and without the knowledge of the testator, and then, when he read the writing to the testator, concealed his fraud by not reading the clauses fraudulently inserted. It is wholly unnecessary to consider whether, if the fraud charged had been proved, it would have invalidated the whole will or merely vitiated the clauses improperly inserted, for, by the overwhelming weight of the evidence on this point, it is made entirely clear that the clauses in question constituted a part of the testator's testamentary wishes, were inserted by his direction, and were read to him, in their order, when his will was read to him prior to its execution, and were subsequently read by him when he read the will himself. The evidence in support of the charge is so light and unsubstantial, especially when contrasted with the opposing evidence, and the wrongful conduct alleged is so entirely destitute of either motive or purpose, that I think the charge must be dismissed as without the least foundation in fact.

The other reason is, that the testator did not sign the will in the presence of the subscribing witnesses, nor acknowledge the

Farley *v.* Farley.

making of his signature thereto in their presence. This reason raises a question of fact which must be determined by the evidence in the case. The direction of the statute is plain. It requires not only that a will shall be signed by the testator, but also that his signature shall either be made in the presence of the subscribing witnesses or the making thereof acknowledged by him in their presence. The decisions are not entirely in accord as to what will constitute a sufficient acknowledgment to be adjudged to be a compliance with this requirement of the statute. Chancellor Zabriskie intimated, in *In re McElwaine, 3 C. E. Gr. 499, 501,* that a declaration by the testator that the writing, to which he had signed his name, but not in the presence of the witnesses, was his will, was not such an acknowledgment of his signature as the statute required ; and Chancellor Runyon so expressly held in *Ludlow* v. *Ludlow, 8 Stew. Eq. 480, 485,* his language being : " The signature must either be made or acknowledged by the testator in the presence of the witnesses, and his saying that the paper is his will is not an acknowledgment of his signature within the meaning of the statute." The court of appeals of New York, on the contrary, has held, in construing a statute like ours, that when a testator produces a paper to which he has signed his name, and requests the witnesses to attest it, and declares the paper to be his last will, his act and declaration constitute an acknowledgment of his signature. *Baskin* v. *Baskin, 36 N. Y. 416, 419 ; Gilbert* v. *Knox, 52 N. Y. 125, 129.* The reasoning on which these decisions rest is this: That a testator fully complies with the spirit and purpose of the statute when he verifies his signature as authentic, without regard to the particular form in which such verification is made ; and that he cannot make a more unequivocal acknowledgment of the authenticity of his signature than by presenting the paper to which it is affixed to the witnesses for attestation and publishing the paper so subscribed as his will. And the court of errors and appeals of this state, speaking by Mr. Justice Scudder, in *Ludlow* v. *Ludlow, 9 Stew. Eq. 597, 601,* said that it is not necessary that the testator should, by his own words, acknowledge his signature, but he will comply with the statute, in this regard, if, by

Farley v. Farley.

some word or sign, he clearly indicates to the subscribing wit-
nesses his recognition of the genuineness of his signature at-
tached to the paper which he requests them to attest as his will.
It is not necessary, however, in deciding this case, to adopt either
of these conflicting views, for the clear weight of the proofs shows
that both subscribing witnesses saw the testator sign this will.

The will was first admitted to probate by the surrogate on the
oath of Mrs. Mary Alpaugh, one of the subscribing witnesses,
alone.   She swore that she saw the testator sign the will, and
that David Walters, the other subscribing witness, was present
at the same time and also saw him sign it.   An appeal was taken
from the action of the surrogate, and on the hearing of the ap-
peal by the orphans court Mr. Walters was examined as a wit-
ness.   His description of the events attending the execution of
the will shows that Mrs. Alpaugh was not present when the tes-
tator signed the will.   He says he thinks Mrs. Alpaugh came
into the room where the will was executed after the testator and
he had signed the will, and that when she came in the scrivener
said : " Now, father, tell Mrs. Alpaugh what this is and what
you want her to do ;" and that the testator then said : " This is
my last will and testament and I want you to sign it as a wit-
ness ;" and that she, after a little hesitation, signed the will as a
witness.   He also said that, so far as he was able to remember,
the testator said nothing after he requested Mrs. Alpaugh to sign
the will as a witness.   He further said that the attestation clause
was read in the presence of the testator, Mrs. Alpaugh and him-
self, but when or at what particular point of time in the trans-
action he did not state.   The attestation clause shows an exact
compliance with each of the statutory requisites.   It expressly
declares that both of the attesting witnesses saw the testator sign
the will.   Mr. Walters is a clergyman, and at the time of the
execution of the will was the pastor of the testator.   Considering
his profession, it is somewhat difficult to believe, if the fact had
been as he now remembers it, that Mrs. Alpaugh was not present
when the testator signed, that he would have put his name to a
writing which he knew declared, contrary to the truth, that she
was present.   Besides, the position in which the signatures of the

attesting witnesses stand furnishes some evidence that Mr. Walters is mistaken as to the order in which they were written. Mrs. Alpaugh's is first and his second; in other words, her's stands above his. In the natural order of such events, if he had written his first, and while she was absent from the room, as he now thinks he did, it is highly probable that he would have written his so close to the attestation clause as not to leave sufficient space above his for her's; but if he had, by accident or design, left sufficient space, the chances were ninety-nine to one, when she came to sign, unless otherwise directed—and nothing of that kind appears—that she would have written her signature under his. Mrs. Alpaugh was not called by either party as a witness on the trial of the appeal, but the scrivener was. He testified that after the will was completed he read it to the testator; that the witnesses were then called and the testator put his signature to the will; then, he says, I told the testator that he should tell the witnesses what it was, whereupon he took it in his hand and held it up and said, "This is my last will," and asked Mrs. Alpaugh to sign it as a witness. No other witness gave testimony respecting the fact in dispute, so that the question at issue must be decided by the evidence of Mr. Walters and the scrivener and that furnished by the attestation clause and the deposition of Mrs. Alpaugh. Her deposition is evidence, and must receive consideration. The court of errors and appeals, in *Ludlow* v. *Ludlow, 9 Stew. Eq. 597, 602,* expressly held that a similar deposition, when supported by a perfect attestation clause, raised a very strong presumption in favor of the due execution of the will; and in *Wright* v. *Rogers, L. R. (1 Pro. & D.) 578,* Lord Penzance admitted a will to probate on such a deposition, supported by a perfect attestation clause, in opposition to the positive evidence of the other subscribing witness showing that the will had been executed in flagrant disregard of one of the statutory requirements.

The evidence, then, on the point in dispute stands in this wise: Mr. Walters says that he thinks Mrs. Alpaugh did not see the testator sign the will. She, however, says she did; so does the scrivener, and a written testimonial, made and read to Mr.

Walters and signed by him contemporaneously with the execution of the will, also says that she did. In cases of this kind, the attestation clause, as was said by Lord Penzance in *Wright* v. *Rogers*, " is a most important element of proof." It is made for the very purpose of preserving, in permanent form, a record of the facts attending the execution of the will, so that, in case of the failure of the memory of the attesting witnesses, or their death, or other casualty, they may still be proved. It is for this reason that the courts have uniformly held that, on proof of the authenticity of the signatures of the subscribing witnesses, the facts stated in the attestation clause must be considered and accepted as true, until it is shown by affirmative proof that they are not. *Mundy* v. *Mundy, 2 McCart. 290, 293; Alpaugh's Case, 8 C. E. Gr. 507; Allaire* v. *Allaire, 8 Vr. 312, 325; Tappen* v. *Davidson, 12 C. E. Gr. 459, 460; McCurdy* v. *Neal, 15 Stew. Eq. 333, 335; Ayres* v. *Ayres, 16 Stew. Eq. 565, 569; Elkington* v. *Brick, 17 Stew. Eq. 154, 167.* As appears to me to be manifest, without further discussion, the decided weight of the evidence, *aliunde* the attestation clause, goes to demonstrate, rather than to disprove, the truth of the attestation clause on the point in dispute. The decree of the orphans' court will be affirmed.

For the reasons stated on the hearing, that part of the decree from which the respondents appealed will also be affirmed, and neither party will be awarded costs, as against the other, on the appeal.