---

## SAME CASE—APPLICATION FOR A RE-HEARING.

One who signs an agreement to take stock in an incorporated company, thereby promises to pay the full amount of every share thus subscribed for; and an action will lie to recover it, either for the purpose of carrying on the business of the company, or of paying its debts. And where the stockholders refuse or neglect to elect Directors to manage its affairs, or elect those who will not call in the stock to pay its debts, any creditor will have an action to compel such stockholders to pay, each of whom will be responsible for the amount subscribed by him, if so much be necessary to pay the debts. The stockholders will not be allowed to throw the loss upon the creditors, either by refusing to pay for their stock, or by forfeiting it, or by dissolving the corporation by non-user or otherwise.

GARLAND, J. This case is before us, on an application for a re-hearing. In the opinion already expressed, it is not stated that two sets of interrogatories were propounded and answers given. This omission, with that of one or two other facts, perhaps not very material, make it proper to re-state the case, that, as a whole, it may appear connected.

The plaintiffs obtained a judgment against the Union Insurance Company, as drawers of a promissory note for $1000, on which they issued an execution. This execution was received by the sheriff on the 26th of February, 1840. Two days after, the plaintiffs presented a petition to the Commercial Court, in which, after representing that they are judgment creditors of the defendants, they state that they have reason to believe the Atchafalaya Rail Road and Banking Company is indebted to the Union Insurance Company ; wherefore they pray that, according to the 13th section of the act of 1839, to amend the Code of Practice, (B. & C. Dig. 458), the said Rail Road and Banking Company may be cited to answer, under oath, the following interrogatories :

*First.* Are you not a stockholder in the Union Insurance Company ?

*Second.* Have you not been notified of a call for an instalment from said Company to pay its debts ?

*Third.* Are you not indebted to said Company in the amount of said instalment, or in some other, and what amount ?

*Fourth.* Are you not indebted to said Company in a sum sufficient to satisfy the plaintiffs' claim, as stated in the petition ?

To these interrogatories, on the 7th of March, 1840, Charles Harrod, Cashier of the Rail Road and Banking Company, answered :

*First.* They are stockholders in the Union Insurance Company.

*Second.* A call was made on the stockholders for an instalment.

*Third.* This Bank is not indebted to said office for said instalment, or in any other sum.

*Fourth.* No.

On the 13th of April, 1840, the execution issued in this case was returned *nulla bona.* On the 29th of the same month, the plaintiffs issued an *alias fieri facias ;* and on the same day filed a

petition similar to the former, and again propounded the following interrogatories :

*First.* Are you not stockholders in the Union Insurance Company, and for how many shares ?

*Second.* How much have you paid on each share ?

*Third.* Does not the amount not yet paid on your stock, exceed five thousand dollars ?

To these interrogatories, the Cashier answered :

*First.* This Bank does own stock in the Union Insurance Company ; the number of shares, I presume, the books of the office will show.

*Second.* All that have been legally called for.

*Third.* This Bank is not indebted to said Insurance Company.

On the *alias fi. fa.* last issued, the sheriff returned, on the 16th of July, 1840, that he had " seized, in the hands of the President and Directors of the Atchafalaya Rail Road and Banking Company, the goods and chattels, lands and tenements, moneys, effects, or property of any kind, which they might have in their possession, or under their control, belonging to the defendants, to an amount sufficient to satisfy this writ, of which seizure nothing came into the hands of the sheriff. No other property found."

Some days after these answers were filed, the plaintiffs came into court, and alleged that they were false, and that they were ready to establish their falsehood. The Bank, by its counsel, joined issue on these allegations.

On the trial, the Atchafalaya Rail Road and Banking Company admitted that they were subscribers to the stock of the Union Insurance Company, for one thousand shares, and that they had paid only five dollars per share. It was also admitted, that there were other subscribers for an equal amount, who had only paid the same sum per share.

The plaintiffs had a judgment, and this appeal is taken from it.

By the third section of the act, incorporating the Union Insurance Company, it is provided : " That the subscribers to the said Company shall pay at the time of subscribing, five dollars on each share ; and give their notes endorsed to the satisfaction of the commissioners, for five dollars on each share, payable in sixty days from the date ; and for five dollars each share, payable in ninety days from the date ; and for five dollars each share, payable in four

months from the date ; and for ten dollars each share, payable in six months from the date ; and the remaining twenty dollars for each share, shall be paid or secured to be paid, at such time and in such manner, as the President and Directors of said Company shall direct; *provided*, that the payment thereof shall be made by instalments, at such periods as shall be agreed upon by the President and Directors ; and any subscriber or stockholder who shall neglect to pay any instalment as ordered, or may be ordered by the Board of Directors, shall forfeit to the Company all previous payments, and shall cease to be a stockholder in said corporation, unless the Board of Directors, in their discretion, should determine to compel the payment of said subscription by suit."

The Rail Road and Banking Company admitted, as the Cashier had previously sworn, that they were the owners of one thousand shares of stock, and that they had only paid five dollars per share on it. The stock was fifty dollars per share, so that forty-five dollars per share were still owing. It was not proved, nor pretended, that the notes required to be given had ever been executed, although the counsel for the appellants urged that we were bound to presume so, otherwise his clients could not be stockholders. We know of no such legal presumption in favor of the appellants, nor any good reason why a presumption of the kind should be entertained. It was a fact which the appellants could have easily shown, if material to their defence. It is sufficient that the Rail Road and Banking Company admitted the ownership of the stock. If they apprehended any loss from their notes being still outstanding, it would have been well to have shown, in the first place, that the notes existed. It is now six years since the notes were required to be executed, payable in sixty, ninety, one hundred and twenty, and one hundred and eighty days. It is not pretended that they have been paid, or ever presented for payment ; and the presumption is much stronger that they were never given, than that they were. Therefore, twenty-five dollars are yet owing on each share, which the Rail Road and Banking Company are bound to pay, without any call from the Directors, the term of payment being fixed by the charter. The subscribing for the stock created the obligation to pay, and the benefits expected from it formed the consideration for the notes, which were, if ever executed, the evi-

dence of a debt; and on them, if given or on the subscription, if they were not executed, the Insurance Company has a right to enforce payment from a garnishee, as is apparent from the last clause in the third section of its charter. The subscribing for the stock created a debt, from which the stockholders cannot release themselves at pleasure, by saying that they never complied with their contract; nor can they evade the payment, by special pleading, when the creditors of the corporation call on them in a legal manner. In choosing, in our former opinion, to place the responsibility of the garnishees, upon their liability to pay the twenty dollars per share, which was not to be secured by notes, we must not be understood as giving up the ground of their being responsible for the twenty five dollars per share, which was to be so secured. We think both grounds are tenable.

A person who, with others, signs an agreement or promise to take stock in an incorporated company, thereby promises to pay the corporation the sum necessary to cover every share set opposite to his name, and an action will lie to recover it. This point has been repeatedly decided, both in England and the United States, and rests upon the plainest principles of law and justice. 6 Barn. & Cress. 341. 1 Maule & Selwyn, 569. 9 Johns. Rep. 217. 14 Ibid. 238. 16 Mass. 94. Angel on Corporations, 293. This action may be maintained for the purpose of getting in the stock to carry on the business, or to execute the purposes for which the corporation was created, and also to pay the debts it may contract.

We are, further, of opinion, that whenever the stockholders in an incorporated company neglect or refuse to elect Directors to manage its affairs, and keep it in operation, or elect persons who will not call in the stock to pay the debts which. may have been contracted, the creditors will have an action to compel them to pay, and that each will be responsible for the amount subscribed, if so much be necessary to pay the debts. It is not to be permitted to any number of individuals to get up incorporated companies for insurance, banking, or other operations, and, after enabling them to get in debt, to throw the loss upon the creditors, by refusing to pay their stock, or forfeiting it, or dissolving the corporation and releasing themselves by non-user.

As to the responsibility of the stockholders towards the creditors, we have not a shadow of doubt. As between themselves, when calls are made for payment, and their rights under the charter are to be investigated, other questions will, no doubt, arise, which it is not our purpose to examine at this time.

*Re-hearing refused.*