The Surrogate.
On the 10th of August, 1884, this decedent died at Long Branch, N. J., where she had resided for several years. A paper purporting to be her last will was propounded in this court on August 16th, 1884, and a petition was filed, praying for its admission to probate. Objections were duly interposed, and the issues thus raised were afterwards brought to a trial which is now concluded. The instrument in controversy is in words following :
“ If I, Cecilia L. Booth, should die within the year 1884, I leave to my sister, Geraldine Josephine Timoney, all the money due me from my late father’s deceased will, also my wearing apparel and furniture, and I also leave to my little nephew, Albert Philip Timoney, all money deposited in the Emigrant Savings Bank, in my maiden name, Cecilia L. Hatfield.
“ Witnessed by Amelia Kurrus, Mamie Clifford, June 16, 1884.”
It appears in evidence that the whole of this instrument, except the names of the two attesting witnesses, is in the handwriting of the decedent; that those *420 names were written by Amelia Kurrus and Mamie Clifford, respectively, at decedent’s express request; and that, while these two witnesses were together in her presence, she declared the paper to be her will. Its admission to probate is resisted upon the following grounds:
First.—It is claimed that, as the decedent, at the time of her death, was domiciled in New Jersey, there executed the disputed paper and there died, the Surrogate of this county has no jurisdiction to grant probate to such paper, in the first instance, and before it has been submitted to the proper judicial tribunal of decedent’s domicil.
Whatever authority the Surrogate has in the premises is derived from the Code of Civil Procedure. Section 2611 of that Code declares, among other things, that a will executed without the State of New York, and within the United States, in accordance with the laws of the place of its execution, may be proved in the State of New York. Section 2476 confers upon the Surrogate’s court of this county jurisdiction to take proof of the will of a non-resident testator who has died without the State, leaving personal property within such county. That the decedent, in the case at bar, left personal property in the county of New York is alleged in the petition, and is not denied.- The respondent’s contention as regards jurisdiction is therefore overruled (see Russell v. Hartt, 87 N. Y., 19).
Second.—It is insisted that the evidence fails to show the due execution of the paper which has occasioned the present controversy. The strength of this *421 objection must be tested, not by the laws of New York, but by the laws of New Jersey (see Moultrie v. Hunt, 23 N. Y., 394 ; Dupuy v. Wurtz, 53 id., 556).
The act entitled “A supplement to the act entitled An act. concerning wills ” was passed by the New Jersey Legislature in 1851, and has been in force ever since (Nixon’s Digest, 1032). Its first section is as follows: “ All wills and testaments.....shall be in writing and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing be declared to be his last will in presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator.”
The contestant insists that the paper here in controversy fails to conform to the requirements of the foregoing statute in two particulars: ls£, because it does not bear the “ signature ” of the alleged testatrix, and 2d, because the name of Cecilia L. Booth, which appears in the body of the instrument, and which is relied upon as the decedent’s signature, is not satisfactorily shown to have been written by her in the presence of the two subscribing witnesses or in their presence to have been acknowledged as her signature.
The reports of judicial decisions in the state of New Jersey are silent, with respect to the meaning of the words “signed” and “signature,” in the statute of 1851, of the word “ signed ” in the statute of 1850, and of the same word in the statute of 1714. The last named act (1 Laws of New Jersey, 7) provided *422 that wills should be in writing and should be “signed” by the testator. When that act went into operation, the Statute of Frauds (29 Charles II., ch. 3) was nearly forty years old. That statute had prescribed, by its fifth section, that all devises and bequests of lands should be “in writing and signed by the parties so devising the same and should be “ attested and subscribed by three or four credible witnesses.” As early as 1680, the Court of King’s Bench decided that, within the meaning of § 5, the position of the testator’s signature was immaterial (Lemayne v. Stanley, 3 Lev., 1). It was held by all the Judges that the words “ I, John Stanley,” written by John Stanley himself in the exordium of his will, constituted a valid signature “ within the statute, which does not appoint where the will shall be signed, in the top, bottom or margin, and, therefore, a signing in any part is sufficient.”
This decision has been adversely criticised by writers of legal treatises; but the interpretation which it fastened upon the Statute of Frauds was stoutly upheld in the English courts for more than a century and a half, and, until the enactment of the statute of 1 Victoria, ch. 26, a subscription by the testator at the foot or end of his will was never deemed essential to its validity (see Cook v. Parsons, Finch’s Prec, in Ch., 185; Coles v. Trecothick, 9 Ves., 234; Morrison v. Turnour, 18 id., 174; Trott v. Skidmore, 6 Jur., N. S., 760).
The American courts have generally followed in the path of these decisions, though at times somewhat grudgingly. It was declared by the General *423 Court of Virginia, in 1815 (Selden v. Coalter, 2 Va. Cas., 553), that, in interpreting the Statute of Wills of that State (a statute which was admittedly borrowed from 29 Charles II., ch. 3), the doctrine of Lemayne v. Stanley (supra), should be accepted as authoritative. Parker, J., pronouncing the opinion of the court, said that the word “ signed,” as used in the Virginia Wills act, must be taken as having the .legal sense that had been stamped upon it by the English courts, and declared it to be settled law that the insertion of a testator’s name in the beginning of a holographic will constituted a sufficient signing. To similar effect see, also, Matter of Sarah Miles (4 Dana [Ky.], 1; Adams v. Field, 21 Vt., 256 ; Allen v. Everett, 12 B. Monroe, 371; Armstrong v. Armstrong, 29 Ala., N. S., 538).
These cases fully establish the proposition that, where the testator’s signature is made one of the essential features of the valid execution of a will, his name need not be subscribed at the foot or end of such will, but if written in any part of the instrument, will constitute a sufficient signature, provided that such instrument is in the handwriting of the testator himself, and that, by inserting his name, he has designed to authenticate such instrument without further signature, and provided also that such insertion of his name has been made by the testator in the presence of the attesting witnesses, or has in their presence been duly acknowledged.
Several of the cases above cited go much further than this; few have fallen under my observation that do not go as far.
*424 In Catlett v. Catlett (55 Mo., 340), cited by the contestant, the so-called will was not in the handwriting of the testator, and was not put upon paper in his presence. Besides, the testimonium, clause clearly indicated that the introduction of his name at the beginning of the instrument was not intended to take the place of a more formal signature. In Waller v. Waller (1 Gratt., 454), also cited by contestant, the paper in dispute was holographic, but, though it concluded with an unfilled attestation clause, it bore the names of no witnesses. From these facts the court inferred that the instrument was deliberative merely, and that, in its unfinished state, its maker could never have intended it as a completed will.
Ramsey v. Ramsey (13 Gratt., 664) and Roy v. Roy’s Ex’rs (16 Gratt., 418) are. decisions interpretative of the Virginia Wills act of 1849. That act required, not only that a will should be signed by the testator, but that it should be signed “ in such a manner as to make it manifest that the name was intended as a signature.” In view of the exactions of this statute, the courts held, in the two cases just cited, .that the act of a testator in writing his name at the commencement of a holographic will was an equivocal act, and would not constitute a sufficient signing, unless the testator’s intention to give it effect as a signature was somehow made apparent on the face of the paper. Whatever construction I might give to the words “signed” and “signature” in the New Jersey statute of 1851, if the question of their meaning were now res integra, the weight of authority fully sustains the proponent’s claim that Mrs. Booth’s *425 insertion of her name, in the opening sentence of the paper before me, constituted, when taken in connection with the attendant circumstances, a valid and sufficient signing.
In Hoysradt v. Kingman (22 N. Y., 872), Demo, J., referring to the re-enactment in this State, of the Statute of Frauds and to the decisions of the English courts interpreting that statute, declared that those decisions were “ authority with us, to the same extent as in the English courts.” In Davis v. Shields (26 Wend., 352-358) our Court of Errors clearly recognized the technical distinction between the word “ sign ” and the word “ subscribe.” So, also, did our Court of Appeals, in James v. Patten (6 N. Y., 9). So did the legislature of this State when, in 1830, the existing Wills act was placed upon the statute book. The express direction in that act contained, that a testator’s name must thenceforth be subscribed at the end of his will, was avowedly inserted to prevent the recurrence of the mischiefs that were supposed to have resulted from the loose interpretation of the word sign in the Statute of Frauds.
Similar restrictive provisions were enacted in Pennsylvania three years later, and by the British Parliament in 1837. It was after these conspicuous events that the legislature of New Jersey addressed itself, in 1861, to the modification of the statute of 1714, respecting the execution of wills. The word “ signed ” had then a precise technical meaning, which had been firmly established by a long line of adjudications. Surely, that much construed Avord would not haxre lieen made to do duty in the amended statute if the *426 legislature had intended to prescribe more stringent rules than had theretofore existed, respecting the place of a testator’s signature.
Third.—The evidence does not distinctly show that the witness Mamie Clifford saw the name of Cecilia I/. Booth written by the decedent; and it is possible that, at the time it was written, Miss Clifford was not in the same room with the decedent, but in the room adjoining. Under all the circumstances, however, the signature was probably made in her presence within the decisions of Compton v. Mitton (7 Halst., 70), Mickle v. Matlack (17 N. J. Law, 88) and Ludlow v. Ludlow (35 N. J. Eq., 489). Besides, there can be no doubt that, when Mrs. Booth' was writing the will, both the witnesses were at hand, for the purpose of attesting it; and that, when in their presence she declared it to be her will, she intentionally placed it before them, so that her name stood revealed. This' was a substantial acknowledgment of the signature (Beckett v. Howe, 39 L. J. R., N. S., Prob. & M., 1; In the goods of Janaway, 44 L. J., P. & M., 6 ; Ilott v. Genge, 3 Curt., 172; Keigwin v. Keigwin, 3 Curt., 611; In the goods of Bosanquet, 2 Rob., 577; Gwillim v. Gwillim, 3 Sw. & Tr., 200; Baskin v. Baskin, 36 N. Y., 416).
Petition granted.