The opinion of the court was delivered <by
Nicholls, C. J.
This is an appeal from a judgment of the Civil District Court for the parish of Orleans, dismissing an opposition filed by the Citizens Bank to the account of the testamentary executrix of Adam Thomson, and homologating said account and authorizing and directing the distribution of the funds of the succession in accordance therewith.
The petition of opposition avers that Thomson was at his death, and had been for many years before, a stockholder of the bank, holding and owning eight hundred .and fifty-four shares of the capital stock of one hundred dollars each; that the bank had made calls for contributions of seven hundred and eight dollars upon his shares *1078 each year from 1881 to 1890, inclusively, which he neglected and refused to pay, said calls or contributions bearing by law interest at the rate of eight per cent, per annum from the 1st of December of each and every year.
That the aggregate of said contributions amounted to the sum of seventeen thousand and eighty dollars.
That Thomson was entitled to a credit'on June 13, 1891, of eight thousand and forty dollars, the same being the proceeds of sale by executory process of the property mortgaged to secure the stock.
That Thomson’s succession is still in debt to the bank in the sum of nine thousand and forty dollars, with eight per cent, per annum interest from the 1st of December of each year, from 1881, upon the said ten annual calls or contributions of seventeen hundred and eighty dollars.
The bank prayed for judgment accordingly, and that its claim be placed upon the account with interest, reserving the right of the bank to any future claims that it may have for the balance which will hereafter be due for contributions on the eight hundred and fifty-four shares of stock.
The executrix excepted to the demand and opposition on grounds not necessary to be here specially enumerated, as they were renewed in the answer afterward filed. The exceptions were permitted to be filed and argued as such, on the trial of the merits of the opposition.
The grounds of defence of the executrix are substantially:
1. That the subscribers to the cap'.tal of the bank have contracted no personal obligation to pay the amount subscribed for, and they have only bound their property by mortgage.
2. That the ruling of the Supreme Court in the case of the Consolidated Association of the Planters of Louisiana vs. Lord, 35 An. 425, applies to this case, and shows that the subscribers of the Citizens Bank are equally exonerated.
3. That the bank has no light to compromise with some of its mortgage stockholders, and not with others.
4. That the right of the bank to claim the contributions already due by a stockholder is lost when she has caused the shares of such stockholder to be seized and sold, and has bought them in.
On the trial of the opposition the bank waived the reservation it had made in its petition of opposition to the right to demand future *1079 contributions from the succession, admitting “ that it made no claim for any contributions that have been raised or would be raised after the stock of Adam Thomson had been seized and caused to be sold by the sheriff at the instance of the bank in its suit.”
The District Oourt rendered judgment dismissing the opposition of the bank at its costs, and approving and homologating the account filed and ordering the funds to be distributed accordingly.
The bank appealed.
Plaintiff’s contention that in subscribing to the Citizens Bank stock the subscribers merely subjected their property to mortgage and incurred no personal liability is not well founded. In Cuculu vs. The Union Insurance Co., 2 Rob. 577, this court said:
“ A person who with others signs an agreement or promise to take stock in an incorporated company thereby promises to pay the corporation the sum necessary to cover every share set opposite his name, and an action will lie to recover it. This point has been repeatedly decided both in England and the United States, and rests upon the plainest principles of law and justice. * * * It is not to be permitted to any number of individuals to get up incorporated companies for insurance, banking or other operations, and, after enabling them to get into debt, to throw the loss upon the creditors by refusing to pay their stock or forfeiting it, or dissolving the corporation and releasing themselves by non-user.”
Cook says (Sec. 71) : “A subscription for shares implies a promise to pay for them, and this promise sustains an action to collect;” and he adds (Sec. 72): “This rule prevails in regard to subscriptions taken before incorporation as well as after incorporation.” There is no question in this case of any implied promise; the promise is absolute and express and the right of action to collect by personal action unquestionable.
We see nothing to take this particular subscription out of the general rule, and the evidence in the record establishes that Adam Thomson, when he purchased the shares of stock referred to herein and the property mortgaged to secure the same, assumed all the obligations of a shareholder in the bank. His personal obligation as resulting from his purchases from the Bishops is equally clear. We do not understand the executrix to question the amount of the calls, the necessity for the same, or the regularity of the proceedings taken to enforce them. On the contrary, she sets up those proceedings and *1080 the sale made under them as a defence, claiming that by reason thereof the succession of Thomson has been released from all liability.
She invokes in favor of this position the doctrine laid down in Cook, Secs. 127 and 128, that “forfeiture of stock relieves the shareholder whose shares are forfeited from liability to corporate creditors,” claiming that the seizure and sale of the stock and the property mortgaged to secure it in enforcement of the demand for calls operated a forfeiture of the stock, and that the corporation by becoming the purchaser of the stock and the property mortgage had assumed and rendered itself liable for all the obligations resulting from the subscription, thereby releasing the succession of Thomson.
In referring to the various remedies of which a corporation can avail itself against its non-paying stockholder, Cook (Sec. 121) says: “ When a subscriber fails or refuses to pay for the shares of stock for which he has subscribed, the corporation generally has several methods of enforcing the contract. First, there is the common law action to collect the subscription as a debt. This remedy always exists except in a few States, where it is available only when the subscription itself or the charter creates a liability to pay; second, the corporation may sue on the subscription, obtain judgment and then proceed to sell the stock under an execution levied to collect the judgment; third, the corporation may bring an action at law for breach of contract, the measure of damages being the difference between the value of the stock at the price which the subscriber was to pay and the market value at the date of the refusal to pay. A fourth and very important remedy is that of forfeiture. It is effected in one of two ways: the forfeiture maybe by a strict foreclosure of the stockholder’s stock — that is, by the taking of .his stock by the corporation itself, or it may be by a public sale of the stock for non-payment of the subscription.”
After a discussion of these various remedies and their effect, the author proceeds to say: “ There is a class of cases where it is held that a forreiture of shares of stock is like the foreclosure of a mortgage, and that just as a mortgage may have judgment against the mortgagor for a deficiency, so may a corporation have its action of assumpsit against a subscriber whose stock having been forfeited has failed to sell for enough to pay his entire indebtedness to the corporation on the subscription. This rule is held to apply equally to original subscribers or their transferees, and any stockholder is lia *1081 ble under this rule for the balance due upon assessments after deducting the amount realized at the forfeiture sale.”
We are of the opinion that the Citizens Bank having made legal calls upon the succession of Thomson which were not responded to, the judicial proceedings taken by the bank were by way of direct enforcement of the contract and not by way of forfeiture. And, therefore, the rules relative to forfeitures are not applicable to this case. '
We are next to inquire what was the effect from other standpoints upon the rights and obligations of parties of the adjudication made to the bank. The matured unpaid calls due by the. succession at the time of the adjudication amounted to seventeen thousand and eighty dollars. The stock with the property mortgaged sold together for eight thousand and forty dollars, so that after exhaustion of the mortgaged property there remained a deficit upon the defaulted calls of nine thousand and forty dollars. Would a third party purchasing the stock and property at this sale have been responsible by reason of thus becoming owner of the stock for this deficiency upon the calls? We think not. In cases of transfer by conventional sale Cook declares that the transferror is liable' for calls payable before the transfer is made, and in some cases for calls made before, but payable after the transfer, and he cites in support of this position, among others, a Louisiana ease, that of the Vicksburg, etc., R. R. Co. vs. McKean, 14 An. 724 (see Cook, Secs. 255 and 258 and notes). To the same effect in Sec. 418 he says: “ The transferror is bound to pay all calls made before the transferee purchases.”
The purchaser at a judicial sale occupies no worse position, and in our opinion matters are not varied by the corporation itself becoming the purchaser. The situation is that to which reference is made in the citation from Cook, Sec. 126. The adjudication left the stockholder responsible for the balance upon the matured assessments or calls after deducting the amount realized from the sale. The bank •claims nothing more than this.
The decisions in the matter of the Consolidated Association of the Planters of Louisiana rested upon the special facts connected with the affairs of that association. As it is entirely separate and distinct from the Citizens Bank the plea of res judicata has no force.
The executrix urges that it would be against good conscience to permit the bank to recover in this case, as though it has made numer *1082 ous compromises of indebtedness with other stockholders it has declined to compromise with the succession she represents. She not only made no defence against the propriety and legality of the calls when made and the proceedings in their enforcement, but she sets up in this suit, as we have said, the proceedings heretofore taken as having released the succession from all liability. Questions as to the calls are not properly before us. All that we are called on to say is whether defaulted calls having been enforced resulting in a purchase by the corporation of the stock and mortgaged property, but leaving a balance due upon the stock, the succession is legally responsible for that balance. If it is, then the bank has the right to a judgment in the premises. Whether the compromises referred to have or have not resulted or will result in unjust discrimination among stockholders is a matter which we would be unable to dispose of from the record even if the issue were properly before us. A thorough knowledge of the entire situation of the bank and the accounts of all the stockholders would be necessary to reach correct conclusions. It is quite possible that the most liberal concessions made to other parties have resulted in larger actual pro rata payments from them on their stock than have been or ever will be made by the succession of Thomson. If the succession should suffer injury the remedy is not that sought to be applied here.
Referring to enforced payments upon stock Cook, Sec. 211, says: “ Corporate creditors compelling stockholders to pay their subscriptions are under no obligation to see that the payments made by the subscribers are proportionately equal. A court of chancery will compel subscribers to pay in full the amount of their unpaid sub - scription if the corporate indebtedness make it necessary, leaving them to seek contribution from the other shareholders. The rule, moreover, is well settled that a shareholder who has been compelled to pay more than his proportion of the debts may maintain his action against his co-stockholders for contribution.”
In Haynes, Liquidator, vs. Kent, 8 An. 132, which was an action to enforce calls made against a stockholder this court said: “The defendant stands as any other partner in a joint stock company and is bound to pay, when regularly called upon, the share of the capital which he agreed to pay. He is in no sense a joint debtor of the corporation. His obligation, on the contrary, is several and entirely unconnected with those of the other stockholders. He owes the amount of his *1083 subscription whether they pay or not, and nothing beyond that amount can be claimed of him under any circumstances.”
Whilst we refer to these authorities we are not called on, as we have said, to express — nor could we from the data in the record — any opinion as to whether the succession has been discriminated against or not, and if so what its precise course should be.
After consideration of the different grounds of defence set up, we have reached the conclusion that they are not well founded.
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the Citizens Bank of Louisiana, against the succession of Adam Thomson, for the sum of seventeen thousand and eighty dollars, being the aggregate amount in principal of the calls made each year from 1881 to 1890, both inclusive, under the charter of the said bank and the laws relative thereto, upon the shares of stock in said bank owned by Adam Thomson, with interest at eight per cent, per annum on each annual call from the 1st of December of the year each call was made until paid, subject to a credit on the 13th day of June, 1891, of eight thousand and forty dollars, the same being the proceeds of sale by executory process of the shares of stock and property mortgaged to secure the same, and that this judgment be placed upon the account of the executrix. It is further ordered that the succession of Adam Thomson pay the costs in both courts.
Miller, J., recused.
Rehearing refused.